[Cite as *Lawrence v. Youngstown*, 2011-Ohio-998.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

KEITH LAWRENCE,              )
                                                 )     CASE NO.   09 MA 189
        PLAINTIFF-APPELLANT,     )
                                               )
        - VS -                   )     O P I N I O N
                                               )
CITY OF YOUNGSTOWN,      )
                                             )
        DEFENDANT-APPELLEE.     )

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court, Case No. 07CV2447.

JUDGMENT:                     Affirmed.

APPEARANCES:
For Plaintiff-Appellant:          Attorney Martin Hume
                                  6 Federal Plaza Central, Suite 905
                                  Youngstown, Ohio  44504

For Defendant-Appellee:          Attorney Neil Schor
                                    26 Market Street, Suite 1200
                                  P.O. Box 6077
                                  Youngstown, Ohio  44501-6077

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  February 25, 2011

VUKOVICH, J.

¶{1}    Plaintiff-appellant Keith Lawrence appeals the decision of the Mahoning County Common Pleas Court granting summary judgment to defendant-appellee City of Youngstown.    Multiple arguments are presented in this appeal, however, the dispositive issues are raised in the second and sixth assignments of error.

¶{2}    The second assignment of error addresses Lawrence's R.C. 4123.90 workers' compensation retaliation claim against Youngstown.    Lawrence maintains that the magistrate incorrectly concluded that the court lacked jurisdiction over the retaliation claim because of a purported failure by appellant to abide by the notice requirement in R.C. 4123.90.    In support of that position, he asserts that while he was required to give Youngstown written notice of the claims against it within ninety days of his discharge, the ninety day time limit did not begin to run until he received notice of the discharge.    Since his notice of claims letter was received by Youngstown within ninety days of when he allegedly received notice of his discharge, he argues that the court had jurisdiction over the claim.

¶{3}    Youngstown, on the other hand, argues that the ninety day time limit starts to run on the date of discharge.    Accordingly, it asserts that since the notice of claims letter was received more than ninety days after the date of discharge, the trial court lacked jurisdiction over the retaliation claim and summary judgment was proper.

¶{4}    Lawrence's sixth assignment of error addresses his racial discrimination claim against Youngstown.    He contends that the trial court incorrectly determined that there were no genuine issues of material fact as to this claim.    Specifically, he asserts that there is a genuine issue of material fact as to whether he was qualified for the position and that he was treated differently than non-protected similarly situated employees.

¶{5}    After reviewing the arguments presented by each party, as to the Workers' Compensation Retaliation claim we find that R.C. 4123.90's ninety day notice requirement is jurisdictional.    The statute as written requires written notice of the claims to be received within ninety days of the effective date of termination, not within ninety days of receiving notice of the termination.    Accordingly, the ninety day time limit began on the date of termination.    Thus, since Lawrence's notice of claims letter

was not received within that period of time, the workers' compensation retaliation claim is barred by the time limits in R.C. 4123.90.

¶{6} As to the racial discrimination claim, we find that Lawrence cannot establish a prima facie case of race discrimination. The employees he uses in an attempt to support his race discrimination claims were not similarly situated and/or were protected employees. Thus, the evidence he presents does not show that he was treated differently than a non-protected similarly situated employee.

¶{7} Consequently, for those reasons and the ones elaborated below, the judgment of the trial court is hereby affirmed.

<u>STATEMENT OF CASE</u>

¶{8} Lawrence is an African-American male who was hired by the Youngstown Street Department (YSD) as a seasonal worker in 1999 and 2000. His position was a laborer and, as such, he was required to operate power equipment and automobiles and have a valid Commercial Driver's License. In 2000, his employment changed from a seasonal worker to a full-time position. However, Lawrence was laid off in September 2002 when Youngstown conducted massive layoffs. From 1999 until his layoff, Lawrence made three separate claims for workers' compensation, he missed significant hours of work while being off on Injured on Duty status, utilized extensive sick hours during that time, and on one occasion was written up for violating Youngstown's reporting off policy.

¶{9} Lawrence was rehired by Youngstown in 2006 upon the request of former Councilman Gillam. Lawrence was required to execute an employment agreement that extended the typical ninety day probationary period to one year, provided that Lawrence's termination during that period could be with or without cause, and stated that Lawrence was to obtain a valid CDL within the first ninety days of his probationary period (Exhibit F to Youngstown's Motion for Summary Judgment – Employment Agreement). The Agreement also contained a waiver provision whereby Lawrence waived the right to sue Youngstown for terminating him during the probationary period.

¶{10} In September 2006, Youngstown hired a new Commissioner of Building and Grounds, Sean McKinney. McKinney was in charge of overseeing operations of YSD. Sometime in the winter, he reviewed all employees' driving records and discovered that Lawrence's Ohio driver's license was suspended on December 10,

2006 for refusing to take a breath test for suspected driving under the influence. McKinney also discovered that Lawrence had failed to advise YSD of his license suspension. Lawrence was still under his one year probationary period when this occurred.

¶{11} Due to the license suspension, on January 7, 2007, Lawrence was suspended without pay. Two days later, McKinney advised Mayor Jay Williams and the City Law Director of his findings and recommended that Lawrence be terminated from his position with Youngstown. A letter dated that day was signed by Mayor Williams indicating that Lawrence's employment with Youngstown was terminated effective January 9, 2007.

¶{12} As a result of the above, on April 17, 2007, counsel for Lawrence sent a letter to Youngstown indicating that Lawrence intended to sue the city because his termination was racially discriminatory and constituted unlawful retaliation for filing workers' compensation claims. The complaint alleging workers' compensation retaliation (Count I) and racial discrimination (Count II) was filed July 6, 2007.

¶{13} Following discovery, Youngstown filed a motion for summary judgment arguing that the trial court lacked subject matter jurisdiction over the workers' compensation retaliation claim because Lawrence failed to comply with R.C. 4123.90 and that alternatively, Lawrence cannot create a genuine issue of material fact concerning the retaliation claim. As to the racial discrimination claim, Youngstown contended that Lawrence cannot create a genuine issue of material fact concerning the claim. As to both claims, it also argued that the employment agreement was a "Last Chance Agreement" and that the waiver provision in the Agreement relinquished Lawrence's right to sue over his termination. Also, Youngstown argued that Lawrence's claims are barred due to the doctrine of judicial estoppel because on Lawrence's bankruptcy petition and the Amended Schedule he did not note these claims.

¶{14} Lawrence filed a motion in opposition to the motion for summary judgment. He disputed all of Youngstown's arguments. The matter was heard by the magistrate.

¶{15} On the workers' compensation retaliation claim, the magistrate decided that Lawrence had not complied with R.C. 4123.90 and thus, the court did not have subject matter jurisdiction. Additionally, it found that Lawrence could not establish a

genuine issue of material fact on that claim. On the racial discrimination claim, the magistrate decided Lawrence could not establish a genuine issue of material fact on that claim. As to the arguments about the validity of the Agreement, waiver and judicial estoppel, the magistrate found that the Agreement was a "Last Chance" agreement and that the waiver provision in the Agreement barred the suit. It also found that judicial estoppel barred the suit. Consequently, it found that summary judgment was appropriate on Counts I and II of the complaint.

¶{16} Lawrence filed timely objections to all the above findings made by the magistrate. Youngstown filed a response to those objections. The trial court overruled the objections and affirmed the magistrate's decision. However, it did not address all the reasons why the magistrate found that summary judgment was warranted for Youngstown, rather it stated:

¶{17} "The Court finds that there are no genuine issues of material fact as to these claims under Counts I and II brought against Youngstown by Keith Lawrence and that reasonable minds can come to but one conclusion: that even construing the evidence in favor of Lawrence, Youngstown is entitled to judgment as a matter of law on these two remaining claims." 10/21/09 J.E.

¶{18} Lawrence timely appeals the trial court's grant of summary judgment.

STANDARD OF REVIEW

¶{19} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison,* 115 Ohio St.3d 241, 2007-Ohio-4948, ¶5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the party against whom the motion is made, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith,* 110 Ohio St.3d 24, 2006-Ohio-3455, ¶10. When a court considers a motion for summary judgment the facts must be taken in the light most favorable to the non-moving party. *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 327.

¶{20} With that standard in mind, we now turn to the arguments raised. However, for ease of discussion and due to the dispositive nature of some of the arguments presented, the assignments of error are addressed slightly out of order.

<u>SECOND ASSIGNMENT OF ERROR</u>

¶{21} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE BASED UPON A FINDING THAT LAWRENCE FAILED TO TIMELY SUBMIT A 90 DAY NOTICE TO THE CITY OF YOUNGSTOWN THAT HE CLAIMED THE CITY VIOLATED OHIO REVISED CODE SECTION 4123.90."

¶{22} R.C. 4123.90 states in pertinent part:

¶{23} "No employer shall discharge, demote, reassign, or take any punitive action against any employee because the employee filed a claim or instituted, pursued or testified in any proceedings under the workers' compensation act for an injury or occupational disease which occurred in the course of and arising out of his employment with that employer. Any such employee may file an action in the common pleas court of the county of such employment in which the relief which may be granted shall be limited to reinstatement with back pay, if the action is based upon discharge, or an award for wages lost if based upon demotion, reassignment, or punitive action taken, offset by earnings subsequent to discharge, demotion, reassignment, or punitive action taken, and payments received pursuant to section 4123.56 and Chapter 4141. of the Revised Code plus reasonable attorney fees. The action shall be forever barred unless filed within one hundred eighty days immediately following the discharge, demotion, reassignment, or punitive action taken, and *no action may be instituted or maintained unless the employer has received written notice of a claimed violation of this paragraph within the ninety days immediately following the discharge, demotion, reassignment, or punitive action taken*." R.C. 4123.90 (Emphasis Added).

¶{24} Our focus in this assignment of error deals with the emphasized portion of the above statute. Specifically, we must determine when the discharge is effective. Is it the actual date of discharge or is it when the employee receives notice of the discharge?

¶{25} Courts have indicated that the ninety day notice requirement and one hundred eighty day filing requirement in R.C. 4123.90 are mandatory and jurisdictional. *Parham v. Jo-Ann Stores, Inc.*, 9th Dist. No. 24749, 2009-Ohio-5944, ¶17; *Gribbons v. Acor Orthopedic, Inc.*, 8th Dist. No. 84212, 2004-Ohio-5872, ¶17-18.

¶{26} There is a split among the districts as to when the ninety day time limit begins to run. The Sixth and Eleventh Appellate Districts have held that the date of

notice of the termination is controlling for computing both the ninety day notice requirement and the one hundred eighty day filing requirement in R.C. 4123.90. *Mechling v. K-Mart Corp.* (1989), 62 Ohio App.3d 46, 48-49; *O'Rourke v. Collingwood Health Care, Inc.* (Apr. 15, 1988), 6th Dist. No. L-87-345. The Eleventh Appellate District explained that to find otherwise would be unreasonable and would be fundamentally unfair. *Mechling*, supra, at 48. In holding as such, it quoted the Ohio Supreme Court for the proposition that formal rules of pleading and procedure are not applicable to workers' compensation proceedings and that an injured employee's claim should not be unjustly defeated by a mere technicality. Id. quoting *Toler v. Copeland Corp.* (1983), 5 Ohio St.3d 88, 91. *Mechling* also quoted *Toler* for its indication that that policy is consistent with the General Assembly's expressed intent in R.C. 4123.95 that R.C. Chapter 4123 should be liberally construed in favor of the claimant. Id.

¶{27} Conversely, the Eighth, Ninth, and Tenth Appellate Districts have stated that the official date of termination, not the date the employee received notice of the termination, is the date the ninety day notice and one hundred eighty day filing requirements in R.C. 4123.90 commence. *Parham*, supra, at ¶19-21; *Butler v. Cleveland Christian Home*, 8th Dist. No. 86108, 2005-Ohio-4425, ¶8; *Gribbons,* supra, at ¶18; *Browning v. Navistar Internatl. Corp.* (July, 24, 1990), 10th Dist. No. 89AP-1081. The *Gribbons* court, when addressing the argument that R.C. 4123.90 should be liberally construed, stated:

¶{28} "The statute of limitations' provision contained in R.C. 4123.90 is not ambiguous; therefore, the liberal construction provision of R.C. 4123.95 has no application." *Gribbons*, supra, at ¶18.

¶{29} Furthermore, these districts, in coming to the conclusion that the ninety day notice requirement begins on the date of discharge, have also consistently stated that Ohio courts have refused to apply a discovery rule to R.C. 4123.90. *Parham*, supra, at ¶20-21 (discovery rule used in the sense that employee is to be aware of all facts by employer so that he or she is aware of cause of action under R.C. 4123.90); *Gribbons*, supra, at ¶17 (discovery rule used in sense that discovery is of the termination, not of a cause of action under R.C. 4123.90).

¶{30} Considering the language of the statute we embrace the approach taken by the Eighth, Ninth and Tenth Appellate Districts, rather than the approach taken by the Sixth and Eleventh Appellate Districts. As to the ninety day notice requirement,

the statute quoted above specifically states "ninety days immediately following the discharge, demotion, reassignment, or punitive action taken." This language clearly references the date of discharge, not notice of discharge. If the General Assembly had intended the time periods to begin to run upon notice of discharge, the statute could have easily been written to indicate as such. Accordingly, we find that the time limits begin to run on the effective date of discharge.

¶{31} That said, it is acknowledged that R.C. 4123.95 does state that R.C. 4123.02 to R.C. 4123.94 must be liberally construed in favor of employees and the dependents of deceased employees. However, to liberally construe this unambiguous statute to mean the notice of discharge, this court would have to add the words "notice of" in front of the word discharge. As the Supreme Court has noted, "a court may not add words to an unambiguous statute, but must apply the statute as written." *Davis v. Davis,* 115 Ohio St.3d 180, 2007-Ohio-5049, ¶15.

¶{32} We acknowledge that our holding that the ninety day notice time begins to run on the date of discharge and not the date of notice of discharge might give employers the incentive to not notify the employee until after ninety days have passed. However, in the case before us, there is no clear allegation that Youngstown withheld the letter of termination for the purpose of preventing Lawrence from filing a suit. Even if we accept Lawrence's position that he did not receive notice of his termination until February 19, 2007, he had forty-nine days to get the notice of claims letter to the city. Furthermore, we note that the complaint was filed within the requisite one hundred eighty day time limit. Thus, any potential delay on the part of Youngstown did not prevent Lawrence from complying with the filing time limits. This is not a situation were it could be found that the employer intentionally withheld the notice of discharge from the employee in an attempt to protect itself from liability.

¶{33} Consequently, we hold that the ninety day notice requirement of R.C. 4123.90 begins on the date of discharge. The termination letter dated January 9, 2007, clearly indicates that Lawrence's effective date of termination was January 9, 2007. See *Butler*, 8th Dist. No. 86108, 2005-Ohio-4425, at ¶8 (stating that the date on the discharge letter is the date of discharge). Therefore, as per the language of the statute, the notice of claims letter had to be received within ninety days of January 9, 2007. Or in other words, Youngstown had to receive it no later than April 9, 2007. Lawrence's notice of claims letter was received April 17, 2007 and, as such, was

untimely. Accordingly, the trial court did not have jurisdiction over the workers' compensation retaliation claim and summary judgment was proper. This assignment of error lacks merit.

### THIRD ASSIGNMENT OF ERROR

¶{34} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE BASED WHERE THERE WAS DIRECT EVIDENCE OF UNLAWFUL RETALIATION AGAINST LAWRENCE FOR FILING HIS WORKER'S COMPENSATION CLAIMS."

### FOURTH ASSIGNMENT OF ERROR

¶{35} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE BASED UPON A FINDING THAT LAWRENCE FAILED TO ESTABLISH A PRIMA FACIE CASE OF UNLAWFUL RETALIATION AGAINST HIM FOR FILING WORKER'S COMPENSATION CLAIMS."

### FIFTH ASSIGNMENT OF ERROR

¶{36} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE WHERE THERE WAS SUBSTANTIAL EVIDENCE IN THE RECORD THAT THE REASON FOR DISCHARGE PROFERRED [SIC] BY THE CITY OF YOUNGSTOWN WAS PRETEXTUAL."

¶{37} The third, fourth and fifth assignments of error address the merits of the workers' compensation retaliation claim. Due to our resolution of the second assignment of error, these assignments of error are moot and, as such, will not be addressed. App.R. 12(A)(1)(c).

### SIXTH ASSIGNMENT OF ERROR

¶{38} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE BASED UPON A FINDING THAT LAWRENCE DID NOT ESTABLISH A PRIMA FACIE CASE OF RACIAL DISCRIMINATION."

¶{39} In general, a prima facie case of racial discrimination requires a plaintiff to establish that he or she: (1) is a member of a protected class; (2) suffered an adverse employment action; (3) was qualified for the position either lost or not gained; and (4) either he was replaced by someone outside the protected class or a non-protected similarly situated person was treated better. *McDonnell Douglas Corp. v.*

*Green* (1973), 411 U.S. 792. See, also, *Farris v. Port Clinton School Dist.*, 6th Dist. No. OT-05-41, 2006-Ohio-1864, ¶50. The burden is on the employee to prove the prima facie case of racial discrimination. *McDonnell Douglas*, supra, at 802.

¶{40} It is undisputed that Lawrence meets the first two elements of the *McDonnell Douglas* test. He is an African American and that he was terminated.

¶{41} The third element is qualification for the position. Youngstown offers evidence that he was not qualified for the position because his license was suspended. It also contends that his previous write-up for not properly reporting off is evidence that he did not perform his job satisfactorily. Mastroprietro Aff. ¶8. Lawrence, on the other hand, attempted to present evidence that he was qualified for the position and that he performed his job satisfactorily. In his own affidavit attached to his motion in opposition to summary judgment, Lawrence references a letter of recommendation written from Jones, Superintendent of Streets, that Lawrence claims shows that he performed his duties satisfactorily. The letter shows that Jones was the General Foreman of the Street Department under former Mayor George McKelvey. In the letter, Jones states that Lawrence is highly recommended for a position as a laborer or maintenance worker, and that Lawrence learned new tasks quickly and was able to complete assignments without constant supervision. Lawrence also provided affidavits from other laborers that stated that Lawrence could have performed his duties as a laborer without driving. Moody Aff. ¶3; Large Aff. ¶3. Those affidavits referred to other employees who were not discharged when their licenses were suspended. Moody Aff. ¶4; Large Aff. ¶4.

¶{42} The above evidence creates a factual issue of whether Lawrence was qualified for the position when his license was suspended. While Moody and Large are not supervisors and are only laborers, their affidavits indicate that Lawrence could have performed the duties of a laborer without a driver's license. Those statements are the opinion of his fellow workers. The statements may be somewhat speculative because those employees are not in the position of authority to draw such a conclusion that an employee could still perform the work without a license. Although Moody and Large's testimony might not carry much weight, when viewed in the light most favorable to Lawrence, the statements do tend to show an issue as to whether he was qualified. Thus, it appears Lawrence presented enough evidence to survive summary judgment on the third element.

¶{43} That said, he fails to offer a genuine issue of material fact to survive the fourth element of the *McDonnell Douglas* test. Under the fourth element, Lawrence makes two separate arguments as to how non-protected similarly situated persons were treated better.

¶{44} In his first argument he contends that non-protected similarly situated employees were only given a ninety day probationary period, not a year probationary period. Those employees were Boris, Cooling, and Rogers.

¶{45} As to Boris and Cooling, the magistrate explains in paragraph forty-nine of its opinion that they were new employees, not rehires. That factual conclusion is confirmed by Lawrence's testimony. Lawrence Depo. 95-96. The requirement of similarly situated requires the comparators to be similarly situated in all respects. *Mitchell v. Toledo Hosp.* (C.A.6, 1992), 964 F.2d 577, 583. Consequently, since they are new employees and he was a rehire, those employees were not similarly situated.

¶{46} At this point, we note that Lawrence finds faults with Youngstown's position that it rehired him. He contends that he was a new employee. He cites the introduction of the employment agreement to support that position.

¶{47} The introduction to the Employment Agreement states that Lawrence has "no present entitlement to being * * * rehired by the City." Following that statement the Agreement states:

¶{48} "NOW, THEREFORE, the parties to this Agreement agree as follows:

¶{49} "I. Employer's Agreement

¶{50} "The Employer agrees to rehire and appoint Employee to the position of driver/laborer in the Street Department."

¶{51} Thus, although this agreement acknowledges that at the time of employment Lawrence was not entitled to rehire, Youngstown did agree to rehire him. Consequently, without any other evidence, Lawrence's claim that he was a new hire and not a rehire fails by the clear language of the employment contract he signed. Thus, his argument that he was similarly situated to Boris and Cooling fails.

¶{52} However, as to Rogers, Lawrence was similarly situated. Rogers was rehired by Youngstown after having been previously laid off. Lawrence Depo. 25, 96. Upon his rehire, Rogers was not required to sign an agreement that subjected him to one year probation, rather he was subject to the ninety day probationary period.

Lawrence Depo. 96.  Thus, Lawrence was treated differently than Rogers by having to sign an extended probationary period.

¶{53} Despite the fact that he was similarly situated to Rogers, Lawrence cannot establish the fourth element of *McDonnell Douglas*.  The fourth element requires evidence that a **non-protected** similarly situated person was treated better.  Rogers is Hispanic.  Lawrence Depo. 25.  Thus, he is a protected employee and does not provide evidence of discrimination.  *Santiago v. Tool & Die Systems, Inc.* (N.D.Ohio 2010), N.D. Ohio No. 1:09-CV-1224.

¶{54} Lawrence failed to offer evidence of any other employee who could qualify as similarly situated.  Thus, for those reasons, Lawrence cannot show that the implementation of the extended probationary period was done on the basis of race.

¶{55}  His second argument under the fourth element of the *McDonnell Douglas* test is that he was treated differently than other similarly situated employees who had their license's suspended.  He was discharged, while they were not.  Those employees were Cerimele, Carter, Cox and Shade.  Moody Aff. ¶4; Large Aff. ¶4.

¶{56} The record reflects that all four of those workers had their licenses suspended and were not terminated because of that suspension.  Carter, Cox and Shade were not under the probationary period, however, as to Cerimele the record indicates that Lawrence does not know whether he was under the probationary period when his license was suspended.  Lawrence Depo. 98-99, 102.  Youngstown maintains he was not under a probationary period.  As stated above, the requirement of similarly situated requires the comparators to be similarly situated in all respects.  *Mitchell*, 964 F.2d at 583.  Thus, to be similarly situated the other employee also had to be under the probationary period at the time that employee's license was suspended.  Considering the evidence presented, we cannot find that those employees were similarly situated to Lawrence since there is no evidence that any of the mentioned employees were under the probationary period when their license was suspended.

¶{57}  However, even if we were to conclude that they were similarly situated, Lawrence still cannot establish the fourth element of the *McDonnell Douglas* test.  Cerimele is Caucasian, while the others are African American.  Lawrence Depo. 98-99; McKinney Affidavit ¶6.  Lawrence cannot use Cerimele to show race discrimination when the other three employees who were African American were treated exactly the

same as Cerimele, i.e. none of them were discharged based upon the suspension. The fact that other African Americans were treated the same as the Caucasian demonstrates that Lawrence's discharge was not based on his African American race.

¶{58} Consequently both of Lawrence's arguments under the fourth prong of *McDonnell Douglas* test fail and accordingly, he cannot show a prima facie case of race discrimination. This assignment of error lacks merit.

### SEVENTH ASSIGNMENT OF ERROR

¶{59} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE BASED UPON A FINDING THAT THE PROFERRED [SIC] REASON FOR LAWRENCE'S DISCHARGE WAS NOT PRETEXTUAL."

¶{60} The arguments made in this assignment of error only need to be addressed if we find that Lawrence established a prima facie case of race discrimination. In the sixth assignment of error we found that Lawrence failed to establish a prima facie case. Thus, this assignment of error is rendered moot, and will not be addressed. App.R. 12(A)(1)(c).

### FIRST ASSIGNMENT OF ERROR

¶{61} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE BASED UPON A FINDING THAT LAWRENCE'S CLAIMS OF UNLAWFUL RETALIATION FOR FILING WORKER'S COMPENSATION CLAIMS AND RACIAL DISCRIMINATION WERE WAIVED."

¶{62} This assignment of error deals with the purported "Last Chance Agreement" Lawrence signed upon his rehire. The trial court determined the agreement validly waived his right to seek legal recourse for terminating him within the one year probationary period. As such, it determined that both the workers' compensation retaliation and racial discrimination claims were barred.

¶{63} Our resolution of the second and sixth assignments of error indicates that summary judgment was properly granted on both the workers' compensation retaliation and racial discrimination claims. Consequently, this assignment of error is rendered moot and will not be addressed. App.R. 12(A)(1)(c).

### EIGHTH ASSIGNMENT OF ERROR

¶{64} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT-APPELLEE BASED UPON A FINDING THAT

LAWRENCE'S CLAIMS WERE BARRED BY THE DOCTRINE OF JUDICIAL ESTOPPEL."

¶{65} As one of its reasons for granting summary judgment, the magistrate determined that judicial estoppel barred both claims because Lawrence did not include the claims in his bankruptcy petition or in the amended schedules to the bankruptcy petition. Under this assignment of error, Lawrence argues that that determination is erroneous.

¶{66} As explained under the first assignment of error, our resolution of the second and sixth assignments of error indicates that the grant of summary judgment on both claims was appropriate for other reasons. Thus, the arguments made under this assignment of error are moot and will not be addressed. App.R. 12(A)(1)(c).

CONCLUSION

¶{67} For the reasons expressed above, summary judgment was correctly granted on both the workers' compensation retaliation and racial discrimination claims. The trial court lacked jurisdiction over the retaliation claim because Lawrence did not comply with R.C. 4123.90's ninety day notice requirement. Lawrence failed to establish a prima facie case of race discrimination. Accordingly, the second and sixth assignments of error lack merit. All other assignments of error are rendered moot.

¶{68} For the foregoing reasons, the judgment of the trial court is hereby affirmed.

Waite, P.J., concurs.
DeGenaro, J., concurs.