[Cite as *Lawrence v. Youngstown*, 2012-Ohio-6237.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KEITH LAWRENCE, | ) | |
| | ) | CASE NO.    09 MA 189 |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| - VS - | ) | O P I N I O N |
| | ) | |
| CITY OF YOUNGSTOWN, | ) | |
| | ) | |
| DEFENDANT-APPELLEE. | ) | |

CHARACTER OF PROCEEDINGS:     Civil Appeal from Common Pleas Court,
Case No. 07CV2447.

JUDGMENT:     Affirmed.

APPEARANCES:
For Plaintiff-Appellant:     Attorney Martin Hume
6 Federal Plaza Central, Suite 905
Youngstown, Ohio  44504

For Defendant-Appellee:     Attorney Neil Schor
26 Market Street, Suite 1200
P.O. Box 6077
Youngstown, Ohio  44501-6077

JUDGES:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

Dated:  December 20, 2012

VUKOVICH, J.

**¶{1}** The Ohio Supreme Court reversed our decision in *Lawrence v. Youngstown*, 7th Dist. No. 09MA189, 2011-Ohio-998 and has remanded the matter to us for consideration of the issues we previously determined to be moot. *Lawrence v. Youngstown*, 133 Ohio St.3d 174, 2012-Ohio-4247, 977 N.E.2d 582.

Statement of the Case

**¶{2}** In 2009, Plaintiff-appellant Keith Lawrence appealed the decision of the Mahoning County Common Pleas Court granting summary judgment to defendant-appellee City of Youngstown on Lawrence's complaint for workers' compensation retaliation and racial discrimination. However, we solely addressed the second and sixth assignments of error and based on our resolution of those assignments deemed all other assignments of error moot.

**¶{3}** Specifically, as to the second assignment of error, which solely addressed Lawrence's R.C. 4123.90 workers' compensation retaliation claim against Youngstown, we found that the trial court lacked jurisdiction over the workers' compensation retaliation claim and thus, summary judgment was warranted. In coming to this determination, we explained that R.C. 4123.90 requires written notice of a workers compensation retaliation claim within 90 days immediately following discharge, i.e. an intent to sue letter. *Lawrence*, 2011-Ohio-998, ¶ 23-24. We found that the word "discharge" meant the actual date of discharge not, as Lawrence suggested, the date the employee receives notice of the discharge. *Id.* at ¶ 22-33. Consequently, since Youngstown did not receive the notice letter within the 90 days, we held that the jurisdictional prerequisites were not met. *Id.* at ¶ 33. In reaching our decision, we acknowledged that there was a conflict among the districts as to whether "discharge" meant the actual date of discharge or whether it meant the date the employee received notice of the discharge. *Id.* at ¶ 26.

**¶{4}** As to the sixth assignment of error, which addressed Lawrence's racial discrimination claim against Youngstown, we also found that this argument lacked merit. We concluded that the race discrimination claim could not survive summary judgment because he could not provide evidence that he was treated differently than a non-protected similarly situated employee. *Id.* at ¶ 39-58. Thus, he could not establish a prima facie case of race discrimination as is required by the *McDonnell Douglas* test. *Id.*

**¶{5}** Based upon our acknowledgment of the conflict of among the districts as to whether "discharge" means the actual date of discharge or if it means the date that the employee receives notice of discharge, Lawrence asked us to certify a conflict to the Ohio Supreme Court, which we did. 04/08/11 J.E. The Ohio Supreme Court accepted our certification and only addressed the resolution of the second assignment of error.

**¶{6}** Upon review, the Ohio Supreme Court held that:

> [I]n general, "discharge" in R.C. 4123.90 means the date that the employer issued the notice of employment termination, not the employee's receipt of that notice or the date the employee discovered that he or she might have a claim for relief under the statute.

*Lawrence*, 2012-Ohio-4247, ¶3.

**¶{7}** Thus, the Ohio Supreme Court essentially held that our interpretation of the statute was correct, however, based upon the facts of the case the Court decided to judicially create a limited exception to the language of the statute. *Id.* ¶ 27. It explained:

> The prerequisites for this exception are that an employee does not become aware of the fact of his discharge within a reasonable time after the discharge occurs and could not have learned of the discharge within a reasonable time in the exercise of due diligence. When those prerequisites are met, the 90-time period for the employer to receive written notice of the employee's claim that the discharge violated R.C. 4123.90 commences on the earlier of the date that the employee becomes aware of the discharge or the date the employee should have come aware of the discharge.

*Id.* at ¶ 27.

**¶{8}** The Court then went on to explain that that limited exception, given the facts of the case at hand, may apply. *Id.* at ¶ 28-29. Thus, it concluded that Youngstown may have timely received Lawrence's notice of the alleged retaliatory

discharge. *Id.* at ¶ 29. Consequently, the matter was remanded back to us to address the assignments of error we deemed moot. *Id.* at ¶ 30.

Statement of Facts

**¶{9}** In our prior decision we provided the following factual and case statement:

Lawrence is an African–American male who was hired by the Youngstown Street Department (YSD) as a seasonal worker in 1999 and 2000. His position was a laborer and, as such, he was required to operate power equipment and automobiles and have a valid Commercial Driver's License. In 2000, his employment changed from a seasonal worker to a full-time position. However, Lawrence was laid off in September 2002 when Youngstown conducted massive layoffs. From 1999 until his layoff, Lawrence made three separate claims for workers' compensation, he missed significant hours of work while being off on Injured on Duty status, utilized extensive sick hours during that time, and on one occasion was written up for violating Youngstown's reporting off policy.

Lawrence was rehired by Youngstown in 2006 upon the request of former Councilman Gillam. Lawrence was required to execute an employment agreement that extended the typical ninety day probationary period to one year, provided that Lawrence's termination during that period could be with or without cause, and stated that Lawrence was to obtain a valid CDL within the first ninety days of his probationary period (Exhibit F to Youngstown's Motion for Summary Judgment—Employment Agreement). The Agreement also contained a waiver provision whereby Lawrence waived the right to sue Youngstown for terminating him during the probationary period.

In September 2006, Youngstown hired a new Commissioner of Building and Grounds, Sean McKinney. McKinney was in charge of overseeing operations of YSD. Sometime in the winter, he reviewed all employees' driving records and discovered that Lawrence's Ohio driver's license was suspended on December 10, 2006 for refusing to take a breath test for suspected driving under the influence. McKinney also

discovered that Lawrence had failed to advise YSD of his license suspension. Lawrence was still under his one year probationary period when this occurred.

Due to the license suspension, on January 7, 2007, Lawrence was suspended without pay. Two days later, McKinney advised Mayor Jay Williams and the City Law Director of his findings and recommended that Lawrence be terminated from his position with Youngstown. A letter dated that day was signed by Mayor Williams indicating that Lawrence's employment with Youngstown was terminated effective January 9, 2007.

As a result of the above, on April 17, 2007, counsel for Lawrence sent a letter to Youngstown indicating that Lawrence intended to sue the city because his termination was racially discriminatory and constituted unlawful retaliation for filing workers' compensation claims. The complaint alleging workers' compensation retaliation (Count I) and racial discrimination (Count II) was filed July 6, 2007.

Following discovery, Youngstown filed a motion for summary judgment arguing that the trial court lacked subject matter jurisdiction over the workers' compensation retaliation claim because Lawrence failed to comply with R.C. 4123.90 and that alternatively, Lawrence cannot create a genuine issue of material fact concerning the retaliation claim. As to the racial discrimination claim, Youngstown contended that Lawrence cannot create a genuine issue of material fact concerning the claim. As to both claims, it also argued that the employment agreement was a "Last Chance Agreement" and that the waiver provision in the Agreement relinquished Lawrence's right to sue over his termination. Also, Youngstown argued that Lawrence's claims are barred due to the doctrine of judicial estoppel because on Lawrence's bankruptcy petition and the Amended Schedule he did not note these claims.

Lawrence filed a motion in opposition to the motion for summary judgment. He disputed all of Youngstown's arguments. The matter was heard by the magistrate.

On the workers' compensation retaliation claim, the magistrate decided that Lawrence had not complied with R.C. 4123.90 and thus, the

court did not have subject matter jurisdiction. Additionally, it found that Lawrence could not establish a genuine issue of material fact on that claim. On the racial discrimination claim, the magistrate decided Lawrence could not establish a genuine issue of material fact on that claim. As to the arguments about the validity of the Agreement, waiver and judicial estoppel, the magistrate found that the Agreement was a "Last Chance" agreement and that the waiver provision in the Agreement barred the suit. It also found that judicial estoppel barred the suit. Consequently, it found that summary judgment was appropriate on Counts I and II of the complaint.

Lawrence filed timely objections to all the above findings made by the magistrate. Youngstown filed a response to those objections. The trial court overruled the objections and affirmed the magistrate's decision. However, it did not address all the reasons why the magistrate found that summary judgment was warranted for Youngstown, rather it stated:

"The Court finds that there are no genuine issues of material fact as to these claims under Counts I and II brought against Youngstown by Keith Lawrence and that reasonable minds can come to but one conclusion: that even construing the evidence in favor of Lawrence, Youngstown is entitled to judgment as a matter of law on these two remaining claims." 10/21/09 J.E.

*Lawrence*, 2011-Ohio-998, at ¶ 8-17.

<u>Analysis</u>

¶{10} Having laid out the facts and procedural history, we now turn our attention to complying with the Ohio Supreme Court's instruction to address the issues we determined to be moot. As to that determination, it is noted that the Ohio Supreme Court reversal only discussed the one issue that pertained to the workers' compensation retaliation claim. Thus, it would appear that the Court's instruction for us to address the issues we previously determined to be moot only applies to the issues that were mooted because of our prior decision regarding assignment of error number two. Or in other words, we must address all issues regarding the workers' compensation retaliation claim. Given that our decision that summary judgment was appropriate on the racial discrimination claim was either not appealed or not accepted

for appeal, we must conclude that that decision stands. Therefore, any issues that were determined to be moot due to the resolution of the sixth assignment of error remain moot and will not be addressed.

## STANDARD OF REVIEW

¶{11} An appellate court reviews a trial court's summary judgment decision de novo, applying the same standard used by the trial court. *Ohio Govt. Risk Mgt. Plan v. Harrison,* 115 Ohio St.3d 241, 874 N.E.2d 1155, 2007-Ohio-4948, ¶ 5. A motion for summary judgment is properly granted if the court, upon viewing the evidence in a light most favorable to the party against whom the motion is made, determines that: (1) there are no genuine issues as to any material facts; (2) the movant is entitled to judgment as a matter of law; and (3) the evidence is such that reasonable minds can come to but one conclusion and that conclusion is adverse to the opposing party. Civ.R. 56(C); *Byrd v. Smith,* 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10. When a court considers a motion for summary judgment the facts must be taken in the light most favorable to the non-moving party. *Temple v. Wean United, Inc.*, 50 Ohio St.2d 317, 327, 364 N.E.2d 267 (1977). With that standard in mind, we now turn to the arguments.

¶{12} The third, fourth and fifth assignments of error deal solely with the workers' compensation retaliation claim and thus, will be addressed prior to the first assignment of error.

## Third Assignment of Error

¶{13} "The trial court erred in granting summary judgment in favor of Defendant-appellee based [sic] where there was direct evidence of unlawful retaliation against Lawrence for filing his Worker's [sic] Compensation claims."

¶{14} An employer may discharge an employee who filed a workers' compensation claim as long as the discharge is for just and lawful reasons. *Goersmeyer v. General Parts, Inc.,* 9th Dist. No. 06CA00045-M, 2006-Ohio-6674, ¶ 8. The statute protects only against adverse employment actions in direct response to the filing or pursuit of a workers' compensation claim. *White v. Mt. Carmel Med. Ctr.,* 150 Ohio App.3d 316, 2002-Ohio-6446, 780 N.E.2d 1054, ¶ 36 (10th Dist.). A R.C. 4123.90 claim can be proven through direct or indirect evidence. *Ferguson v. SanMar Corp.*, 12th Dist. No. CA2008-11-283, 2009-Ohio-4132, ¶ 13, fn. 2; *Wysong v. Jo-Ann Stores, Inc.*, 2d Dist. No. 21412, 2006-Ohio-4644, ¶ 10. In this assignment of error, we

are asked to determine whether Lawrence provided direct evidence of unlawful retaliation for filing a workers' compensation claim.

¶{15} In the context of providing direct evidence of sex discrimination, the Eighth Appellate District has stated that direct evidence is "that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Birch v. Cuyahoga Cty. Probate Court*, 173 Ohio App.3d 696, 2007-Ohio-6189, 880 N.E.2d 123, ¶ 23 (8th. Dist.), citing *Jacklyn v. Schering-Plough Healthcare Prods.*, 176 F.3d 921, 926 (6th Cir.1999). Explicit statements of discriminatory intent constitute direct evidence of discrimination; although, the plaintiff must prove a causal link or nexus between the discriminatory statement or conduct and the prohibited act of discrimination. *Birch* at ¶ 23, citing *Byrnes v. LCI Communication Holdings Co.*, 77 Ohio St.3d 125, 130, 672 N.E.2d 145 (1996). In determining whether comments or conduct are harmless or if they provide improper motive, courts consider: (1) whether they were done by a decision maker; (2) whether they were related to the decision-making process; (3) whether they were more than vague, isolated, or ambiguous; and (4) whether they were proximate in time to the act of alleged discrimination. *Birch* at ¶ 23.

¶{16} Lawrence's purported direct evidence of retaliation is derived from the affidavit of Mayor Williams, in which the Mayor avows:

4. Upon review of this matter, I found Keith Lawrence had been employed with the City in the past, and had a record of employment injuries, and missed work; as a result of this history, I was reluctant to re-appoint Mr. Lawrence to a City position;

5. I agreed to Mr. Lawrence's appointment upon the condition that Mr. Lawrence enter into an Employment Agreement with the City to extend his probationary period from 90 days to one year, to authorize the City to terminate him with or without cause within that period, and to waive all forums for appealing termination.

Mayor Williams Affidavit.

¶{17} Lawrence contends that these statements show that the Agreement containing the extended probationary period was implemented because of his workers' compensation claims. According to him, had he not been on the extended probation, his suspended license would not have resulted in his discharge. He asserts that other

employees who were not on probation were not discharged when their license was suspended. Conversely, Youngstown disputes that the Mayor's sworn statements are direct evidence because it does not demonstrate that Lawrence was discharged because of the workers' compensation claims Lawrence made.

¶{18} Youngstown is correct that the above comments made by the Mayor do not show that his discharge in 2007 was because of his workers' compensation claims filed between 1999 and 2002. While the comments are made by the decision maker, i.e. the Mayor, they relate to the decision to rehire Lawrence, not the decision to terminate him. These comments clearly show that despite the workers' compensation claims and the missed work, Youngstown still rehired Lawrence. He was laid off from 2002 until his rehire in 2006. There is no claim that laying him off was based on the workers' compensation claims. Likewise, considering the Mayor's statement, Youngstown still rehired him; it did not choose to not rehire him because of the workers' compensation claims. Furthermore, from the record, it is undisputed that from his rehire in 2006 until his discharge in 2007, Lawrence did not file a workers' compensation claim. Thus, there is no proximity in time between the workers' compensation claims and the discharge. Consequently, the Mayor's statement is not direct evidence because it does not speak to the discharge and because the claims were filed at least five years prior to the discharge.

¶{19} That said, we acknowledge that the Mayor's statements could tend to show that the extended probationary period was implemented because of missed work and work related injuries. However, the Mayor's statement as to his conduct in rehiring Lawrence, i.e. implementing the probationary period, is not clear enough to show that it was based on the workers' compensation claims that were filed over five to eight years prior to the rehire. Consequently, for the above reasons, this assignment lacks merit; Lawrence did not present direct evidence of retaliation.

### Fourth Assignment of Error

¶{20} "The trial court erred in granting summary judgment in favor of Defendant-appellee based upon a finding that Lawrence failed to establish a prima facie case of unlawful retaliation against him for filing Worker's [sic] Compensation claims."

¶{21} As aforementioned, a workers' compensation retaliation claim under R.C. 4123.90 can be proven through direct or indirect evidence. *Ferguson*, 12th Dist. No.

CA2008-11-283, 2009-Ohio-4132, ¶ 13, fn. 2; *Wysong*, 2d Dist. No. 21412, 2006-Ohio-4644, ¶ 10. Under the third assignment of error, we found that Lawrence failed to provide direct evidence of retaliation. Under this assignment of error, Lawrence argues that he presented indirect evidence of retaliation.

**¶{22}** In the absence of direct evidence of retaliatory intent, Ohio courts resolve retaliation claims using the evidentiary framework established by the United States Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). *Greer-Burger v. Temesi,* 116 Ohio St.3d 324, 2007-Ohio-6442, 879 N.E.2d 174, ¶ 13-14. Our court has explained:

> To prove a violation of R.C. 4123.90, the employee must set forth a prima facie case of retaliatory discharge demonstrating that (1) he was injured on the job, (2) he filed a claim for workers' compensation, and (3) he was discharged by his employer in contravention of R.C. 4123.90. *Wilson v. Riverside Hosp.* (1985), 18 Ohio St.3d 8, 1, at the syllabus. Once the employee demonstrates a prima facie case, the burden shifts to the employer to set forth a legitimate, nonretaliatory reason for the discharge. *Kilbarger v. Anchor Hocking Glass Co.* (1997), 120 Ohio App.3d 332, 338. If the employer can set forth a nonretaliatory reason for the discharge, the burden then shifts back to the employee to show that the employer's reason is a pretext and that the real reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act. *Id.*

*Kaufman v. Youngstown Tube Co.,* 7th Dist. No. 09MA8, 2010-Ohio-1095, ¶ 35.

**¶{23}** When establishing a prima facie case of retaliatory discharge, the party claiming the retaliation must demonstrate a causal connection between the filing of the workers' compensation claim and being terminated. *Id.* at, ¶ 41, citing *Gerding v. Girl Scouts of Maumee Valley Council, Inc.,* 6th Dist. No. L-07-1234, 2008-Ohio-4030, ¶ 31. The causal connection requires evidence of a retaliatory state of mind of the employer. *Buehler v. AmPam Commercial Midwest,* 1st Dist. No. C-060475, 2007-Ohio-4708, ¶ 24. The plaintiff is not required to produce a "smoking gun" to withstand

summary judgment. *Kent v. Chester Labs, Inc.*, 144 Ohio App.3d 587, 592, 761 N.E.2d 60 (1st. Dist.2001).

¶{24} In *Kaufman*, we referenced factors that can demonstrate the existence of causal connection. *Kaufman* at ¶ 42. They are: (1) punitive action like bad performance reports appearing immediately after a claim is filed, (2) the time period between the filing of the claim and discharge, (3) a change in salary level, (4) recent hostile attitudes, and (5) whether legitimate reasons existed for the discharge. *Id.*

¶{25} Considering the record in this case, there is no dispute that Lawrence was injured while working for the YSD from 1999-2002 and that he filed workers' compensation claims. The question here is whether there is a genuine issue of material fact as to whether there is a causal connection between those workers' compensation claims and his rehire in 2006 with the extended probationary period and if those claims resulted in his termination. In looking at the factors set forth in *Kaufman* for showing a causal connection, the City is correct that none are present in this case. Immediately following the three separate claims for workers' compensation there were no bad performance reports, punitive action, change in salary level or expressed hostile attitude toward him. Lawrence contends his rehiring upon the condition of the extended probationary period is part of the punitive action taken against him. However, that action did not occur immediately following the claims. Rather, it occurred somewhere between four and eight years after the claims were filed.

¶{26} The Tenth Appellate District has recently cited to numerous cases that have found that shorter periods did not show a causal connection:

> Courts have found time periods much shorter than the one involved in the instant case insufficient evidence of a causal connection. See *Balletti v. Sun-Sentinel Co.* (S.D.Fla.1995), 909 F.Supp. 1539, 1549 (six-month period between voicing concerns of sexual harassment and discharge 'not temporally close enough to support an inference of causal connection'); *Baker,* supra, at 568 (retaliation claim based upon race discrimination claim and adverse employment actions occurring more than one year later insufficient to show causal connection between protected activity and adverse employment action); *Reeves v. Digital*

*Equip. Corp.* (N.D.Ohio 1989), 710 F.Supp. 675, 677 (no causal connection where three months elapsed between protected activity and adverse action); *Cooper v. City of North Olmsted* (C.A.6, 1986), 795 F.2d 1265, 1272-1273 (mere fact plaintiff was discharged four months after filing discrimination charge insufficient to support an inference of retaliation); *Brown v. ASD Computing Ctr.* (W.D.Ohio 1981), 519 F.Supp. 1096, 1117 (plaintiff's discharge approximately three months after consulting with E.E.O. Office not 'so connected in time as to create an inference of retaliation, [and, thus,] the evidence fails to establish a prima facie case of retaliation').

*Motley v. Ohio Civ. Rights Comm.*, 10th Dist. No. 07AP-923, 2008-Ohio-2306, ¶ 19.

**¶{27}** Furthermore, the probationary period was a condition of his rehire. This is not a situation where the employer implemented a probationary period on the employee immediately following the workers' compensation claim/claims. Rather, here, it is undisputed that Lawrence was legitimately laid off in 2002 as part of massive layoffs by the City. Moreover, the City did not have to rehire Lawrence. When he was rehired the probationary period was implemented and appellant did not cite any statutory provision which prohibited the City from implementing a probationary period. Simply, he would not have been rehired without the probationary period. Thus, based on the first four factors, Lawrence is unable to establish a prima facie case of workers' compensation retaliation.

**¶{28}** The last *Kaufman* factor is whether there was a legitimate reason for the discharge. Once a plaintiff establishes a prima facie case of discrimination under *McDonnell Douglas,* then a presumption is created that the employer unlawfully discriminated against the employee, and the burden shifts to the employer to produce evidence that its actions regarding the plaintiff were based on legitimate nondiscriminatory reasons. *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 254, 101 S.Ct. 1089 (1981). Thus, the burden is on the defendant, i.e. employer, to show the last *Kaufman* factor.

**¶{29}** Here, our above analysis concludes that Lawrence has not established a prima facie case of discrimination under the *McDonnell Douglas* test. Thus, the burden has not shifted to the City to show that there is a legitimate nondiscriminatory

reason for the discharge. Therefore, we are not required to determine if the City provided such a reason. However, in the interest of thoroughness, we will address the issue.

¶{30} Here, the City claimed that the legitimate nondiscriminatory reason for the discharge was due to the fact that Lawrence's license was suspended and that he did not inform the City of that suspension. The record confirms that reason. It is undisputed that Lawrence's license was suspended in December 2006, was not reinstated until January 2007 and Lawrence did not inform his superiors either formally or informally of that suspension. Likewise, the City handbook and the Agreement signed by Lawrence require a YSD laborer (Lawrence's position) to have a valid CDL. Exhibits B and F to Motion for Summary Judgment. Having his license suspended means that he did not have a valid CDL. Furthermore, while all this occurred Lawrence was on probation. As the magistrate noted in its decision, a probationary governmental employee does not possess a property interest in his employment until the probationary period ended. *Ste. Marie v. Dayton*, 109 F.Supp.2d 846, 854 (S.D.Ohio 2000). Consequently, there was a valid reason for discharge.

¶{31} Therefore, given the factors to be considered, there is no causal connection between the discharge and the extended probationary period. Furthermore, even if there was, there is a legitimate reason for the discharge. Thus, this assignment of error lacks merit.


### Fifth Assignment of Error

¶{32} "The trial court erred in granting summary judgment in favor of Defendant-appellee where there was substantial evidence in the record that the reason for discharge proferred [sic] by the City was pretextual."

¶{33} Although this assignment of error is rendered moot by our determination that Lawrence has failed to provide either direct or indirect evidence of retaliation, we will still address this assignment of error.

¶{34} Assuming Lawrence has been able to show either direct or indirect evidence of retaliation, as discussed in the previous assignment of error, the City offered a legitimate reason for the discharge. Youngstown's legitimate non-discriminatory reason was because Lawrence did not inform YSD that his license was suspended. Once the employer sets forth a nonretaliatory reason for the discharge,

the burden then shifts back to the employee to show that "the employer's reason is a pretext and that the real reason for the discharge was the employee's protected activity under the Ohio Workers' Compensation Act." *Kaufman,* 7th Dist. No. 09MA8, 2010-Ohio-1095, at ¶ 35.

¶{35} It has been explained that an employee can meet that burden by showing that the employer's reason: 1) has no basis in fact, 2) did not actually motivate the discharge, or 3) was insufficient to motivate her discharge. *Davenport v. Big Brothers & Big Sisters of the Greater Miami Valley, Inc.*, 2d Dist. No. 23659, 2010-Ohio-2503, ¶ 50; *Egli v. Congress Lake Club*, 5th Dist. No. 2009CA00216, 2010-Ohio-2444, ¶ 39; *King v. Jewish Home*, 178 Ohio App.3d 387, 2008-Ohio-4724, ¶ 9 (1st Dist.).

¶{36} Lawrence's position that the City's reason was pretextual concentrates on the third reason – that the suspended license and failure to inform his superiors of the suspension were insufficient to motivate his discharge. He states that Youngstown's own evidence shows that there were other employees from the YSD whose licenses were suspended and who were not discharged because of that suspension. Youngstown contends that those situations are different from Lawrence's because he was on probation when his license was suspended while the others were not. Also, according to Youngstown, the other employees either formally or informally informed YSD of their suspensions, while Lawrence did not.

¶{37} McKinney's affidavit, attached to Youngstown's motion for summary judgment, provided that Lawrence was not the only employee of the YSD with a suspended license. For instance, John Cox's license was suspended. McKinney Aff. ¶5. Cox, however, was not discharged; rather he was disciplined under the City's Labor Agreement with the Union because he was past his three month probationary period. McKinney Aff. ¶7-8. Furthermore, Cox had informally told his supervisor of the suspension, while Lawrence had not provided formal or informal notice. McKinney Aff. ¶9, 14.

¶{38} Affidavits attached to Lawrence's motion in opposition to summary judgment established that in addition to Cox, there were other employees whose licenses were suspended and who were not discharged. Large Aff. ¶4; Moody Aff. ¶4. They were Terry Carter, Tony Shade, and James Cerimele. Large Aff. ¶4. Those affidavits also state that the other employees were allowed to perform labor duties

while their licenses were suspended and, as such, Lawrence could also have performed labor duties during the license suspension. Large Aff. ¶3-4; Moody Aff. ¶4. None of the affidavits or any other evidence in the record establishes whether Carter, Shade or Cerimele informed YSD either formally or informally of their suspensions.

¶{39} Lawrence's deposition indicates that neither Carter nor Shade were on probation when their licenses were suspended and as to Cerimele he indicates he does not know whether he was on probation. Lawrence Depo. 96, 98-99. Despite his lack of evidence, he contends that the magistrate and trial court incorrectly relied on the fact that those employees were not on probation when their licenses were suspended when determining that the reason for the discharge was not pretext. Lawrence claims we should not rely on such circular reasoning because he was on the extended probationary period because Youngstown was retaliating against him for filing previous workers' compensation claims.

¶{40} Regardless of whether the probationary period is considered, the record indicates that the reason for the discharge was not pretextual. The contract Lawrence signed upon his rehire permits his discharge for any reason and requires him to have a valid license. Furthermore, the contract clearly indicates that the Union will not challenge any discipline during the probationary period. When that is considered, in conjunction with the affidavit from McKinney indicating that a non-probationary employee would be subject to discipline from the Union and would not be subject to being discharged by the employer, it indicates that the discharge was motivated by the suspension and the probationary period. It was not motivated by the workers' compensation claims filed four to eight years earlier.

¶{41} Furthermore, the fact that Lawrence did not inform his supervisor of his suspension is sufficient justification for discharge. Failure to inform the City of his license suspension raises questions as to Lawrence's honesty. While it may be true that a laborer of YSD could perform work without driving, driving is a possibility in that position. Without knowledge of the suspension, the City could not ensure that an employee with a license suspension was not operating a vehicle. If the employee was driving with a suspended license during work, this could cause potential problems for the City. Thus, the failure to inform his supervisors of the suspended license is a legitimate reason for discharge.

¶{42} Moreover, Lawrence has been unable to show that any other employee who had his/her license suspended and did not tell the employer of that suspension was permitted to keep his/her job. As stated above, Cox informally told his supervisors of the suspension. Thus, Cox's situation does not support Lawrence's contention that the City's reason for discharge was insufficient to motivate it. The record does not contain evidence of any other employees' disclosure or nondisclosure of their license suspension to the City.

¶{43} Consequently, even if this assignment of error was not rendered moot by our resolution of the third and fourth assignments of error, the retaliation claim would still fail because under this assignment of error Lawrence has failed to show that there is a genuine issue of material fact that the reason for discharge was pretextual. This assignment of error lacks merit.

<u>Sixth and Seventh Assignments of Error</u>

¶{44} "The trial court erred in granting summary judgment in favor of Defendant-appellee based upon a finding that Lawrence did not establish a prima facie case of racial discrimination.

¶{45} "The trial court erred in granting summary judgment in favor of Defendant-appellee based upon a finding that the proferred [sic] reason for Lawrence's discharge was not pretextual."

¶{46} As aforementioned, we previously held that the trial court's grant of summary judgment on the racial discrimination claim could not survive summary judgment because he could not show a prima facie case of race discrimination. *Lawrence*, 7th Dist. No. 09MA189, 2011-Ohio-998, ¶ 39-58. The Ohio Supreme Court did not reverse our decision on that issue. Thus, our resolution of the sixth and seventh assignments of error remains unchanged. *Id.* at ¶ 58, 60.

<u>First Assignment of Error</u>

¶{47} "The trial court erred in granting summary judgment in favor of Defendant-appellee based upon a finding that Lawrence's claims of unlawful retaliation for filing Worker's [sic] Compensation claims and Racial Discrimination were waived."

¶{48} In this assignment of error, Lawrence argues that the trial court incorrectly determined the Employment Agreement he signed upon his rehire to be a "Last Chance Agreement" (LCA). A LCA waives the right to seek legal recourse for termination.

¶{49} This assignment of error is rendered moot by our resolution of the third, fourth and fifth assignments of error. Even if we were to conclude that the agreement that he signed upon his rehire did not waive the right to seek legal recourse for his termination, the analysis provided above concludes that Lawrence failed to establish a genuine issue of material fact as to his workers' compensation retaliation claim, i.e. the trial court's grant of summary on the workers' compensation retaliation claim was correct. Thus, any determination by this court as to whether the agreement signed upon his rehire waived his right to sue is inconsequential.

Eighth Assignment of Error

¶{50} "The trial court erred in granting summary judgment in favor of Defendant-appellee based upon a finding that Lawrence's claims were barred by the doctrine of judicial estoppel."

¶{51} In this assignment of error, Lawrence argues that the magistrate/trial court was incorrect in determining that judicial estoppel bars the claims because he did not include the claims in his bankruptcy petition or amended schedules to the bankruptcy court.

¶{52} Similar to the first assignment of error, this assignment of error is also rendered moot by our determination that the trial court's grant of summary judgment on Lawrence's workers' compensation retaliation claim was correct. Any determination by this court as to whether judicial estoppel bars the workers' compensation retaliation claim is inconsequential because even if it did not bar the claim, our resolution of the third, fourth and fifth assignments of error conclude that Lawrence's workers' compensation claim cannot survive summary judgment because Lawrence provided no genuine issue of material fact for a case of workers' compensation retaliation and/or that the reason for his discharge was pretextual.

¶{53} CONCLUSION

¶{54} For the foregoing reasons, the judgment of the trial court granting summary judgment to Youngstown on the workers' compensation retaliation claim is hereby affirmed. Lawrence did not present a genuine issue of material fact that there was direct or indirect evidence of workers' compensation retaliation. There is no evidence that a causal connection existed between the alleged punitive action, i.e. requiring him to be a probationary employee for a year upon his rehire, and the workers' compensation claims. However, even if there was, Youngstown provided a

legitimate nondiscriminatory reason for the discharge and thus, shifted the burden to Lawrence to show that there was a genuine issue of material fact as to whether that reason was pretextual.  Lawrence did not demonstrate that there is a genuine issue of material fact as to whether the reason was pretextual.

Waite, P.J., concurs.
DeGenaro, J., concurs.