[Cite as *Janiszewski v. Belmont Career Ctr.*, 2017-Ohio-855.]
STATE OF OHIO, BELMONT COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

| | | |
|---|---|---|
| KARIN E. JANISZEWSKI, | ) | CASE NO. 16 BE 0009 |
| | ) | |
| PLAINTIFF-APPELLANT, | ) | |
| | ) | |
| VS. | ) | OPINION |
| | ) | |
| BELMONT CAREER CENTER, et al., | ) | |
| | ) | |
| DEFENDANTS-APPELLEES. | ) | |

CHARACTER OF PROCEEDINGS:    Civil Appeal from the Court of Common
Pleas of Belmont County, Ohio
Case No. 15 CV 6

JUDGMENT:                    Affirmed.

APPEARANCES:

For Plaintiff-Appellant:     Atty. Patrick Cassidy
Atty. Timothy Cogan
Cassidy Cogan Shapell & Voegelin,
L.C.
The First State Capital
1413 Eoff Street
Wheeling, West Virginia 26003

For Defendants-Appellees:    Atty. Matthew Markling
Atty. Patrick Vrobel
Atty. Sean Koran
McGowan & Markling Co., L.P.A.
1894 North Cleveland-Massillon Rd.
Akron, Ohio  44333

JUDGES:

Hon. Carol Ann Robb
Hon. Gene Donofrio
Hon. Mary DeGenaro

Dated:  March 9, 2017

ROBB, P.J.

{¶1} Plaintiff-Appellant Karin Janiszewski appeals the decision of the Belmont County Common Pleas Court granting summary judgment for Defendants-Appellees Belmont-Harrison Joint Vocational School District Board of Education, Richard Schoene (Superintendent of the Belmont-Harrison Joint Vocational School), and Paula Norman (special education/testing coordinator for the Belmont Harrison Joint Vocational School). The trial court found Appellant's claims for Hostile Work Environment, Disability Discrimination, Defamation, and Fraud could not survive summary judgment. It concluded there was no evidence the alleged harassment was based on sex; Appellant was not qualified to receive the contract at the renewal time, and thus, there was no disparate treatment; Appellant's lack of qualification for the job also meant there was no requirement for Appellees to make a reasonable accommodation; there was no publication of a false statement; and, there was no representation from a decision maker. The court alternatively concluded that Appellees Schoene and Norman were immune from liability and, as to defamation, Appellee Board enjoyed a privilege from liability. The court also concluded the settlement agreement, which resulted from an earlier arbitration of a grievance concerning Appellee Board's decision to not renew Appellant's teaching contract, barred this suit and the claims. We are asked to determine whether all of those decisions are correct.

{¶2} For the reasons expressed below, the trial court's decision is affirmed.

Statement of the Case

{¶3} In 2004 Appellant was hired by the Belmont Career Center[1] as a full-time broadcast journalism/entertainment marketing teacher. Janiszewski Depo. 10. She held the position until 2013 when Appellee Board did not renew her contract. Janiszewski Depo. 23. Her program was housed in the St. Clairsville High School as a satellite program. Janiszewski Depo. 10.

---

[1]Belmont Career Center is Appellee Board's predecessor.

**{¶4}** The stated reason for the nonrenewal of the teaching contract was Appellant's failure to renew her teaching license by the April 15, 2013 deadline in the collective bargaining agreement. Her license would not expire until June 2013; however, the collective bargaining agreement required all teachers seeking renewal to have their license renewed by April 15. According to Appellee Board, the reason for the April 15 deadline was to address a problem that occurred in the past. Specifically, a former teacher failed to renew the teaching license until after the next school year started. This caused the Board to hire a substitute teacher for the first month of the school year. The April 15 deadline was put in the contract to avoid that situation and to have time to hire a qualified candidate if the contract was not renewed.

**{¶5}** Appellant was in a horseback riding accident in November 2012 which, according to her, hindered her ability to complete all the requirements for her license renewal until after the April 15, 2013 deadline. Appellant's license was renewed prior to its expiration in June 2013. However, Appellee Board declined to rehire or interview Appellant for her former teaching position. Instead, Appellee Board hired another candidate.

**{¶6}** Appellant filed a grievance regarding the non-renewal in July 2013. The grievance resulted in a settlement stating, "Janiszewski will release and discharge the Board and its Administrators and employees from any and all grievances, demands or cause of action, known or unknown, related to the collective bargaining agreement in effect between the Board and the BHEA." Settlement Agreement ¶ 4.

**{¶7}** On January 15, 2015, Appellant filed an eight count complaint against Appellees. That complaint was amended twice. 1/22/15 First Amended Complaint; 6/5/15 Second Amended Complaint. The eight causes of action asserted were hostile work environment based on sex[2], disability discrimination, defamation, fraud,

---

[2]In all complaints Appellant references R.C. 4112.14 as the basis for her hostile work environment claim. That statute is the age discrimination statute. The sex discrimination statute is R.C. 4112.02(A). Given the claims, it is clear Appellant was claiming a sex discrimination claim based on R.C. 4112.02(A).

wrongful termination, constitutional violation, malicious prosecution, and false imprisonment.

**{¶8}** Appellees filed an answer and asserted numerous defenses, including privilege, accord and satisfaction, immunity, and the arbitration settlement. 3/2/15 Answer. Appellees also moved for judgment on the pleadings as to defamation, fraud, wrongful termination, constitutional violation, malicious prosecution, and false imprisonment. 4/13/15 Motion. The trial court sustained the motion in part and overruled it in part; the trial court granted judgment on the pleadings as it pertained to wrongful termination, constitutional violation, and malicious prosecution. 5/19/15 J.E; 5/29/15 J.E.[3]

**{¶9}** The remaining claims before the trial court were hostile work environment, disability discrimination, defamation, fraud, and false imprisonment.

**{¶10}** Appellees filed a motion for summary judgment and Appellant responded with a motion in opposition. A hearing on the motions was held in October 2015. At the hearing, the trial court noted Appellees' motion for summary judgment did not assert the defense that the discrimination claims were barred by the settlement of the grievance. Appellees agreed the argument was not raised in the motion. With the trial court's permission, Appellees filed a second motion for summary judgment to address the settlement. Appellant responded to the second motion for summary judgment. A second hearing was held in December 2015. At the conclusion of the hearing, the trial court orally granted Appellees motion for summary judgment based on accord and satisfaction. Tr. 80-82.

**{¶11}** On December 30, 2015, the trial court issued a ruling indicating although it would grant summary judgment based on accord and satisfaction, it would address all issues, including privilege and immunity, in its final judgment.

**{¶12}** The trial court issued its final decision on March 15, 2016. In that order the trial court held summary judgment was appropriate on the hostile work environment claim because Appellant could not produce any evidence the alleged

---

[3]Appellant does not appeal that decision.

harassment was based on sex or the alleged conduct was so severe or pervasive to be actionable. As to the disability discrimination claim, the court held summary judgment was appropriate for Appellees because Appellant was not qualified to receive a succeeding contract from Appellee Board at the time of the renewal deadline. Thus, she could not establish a prima facie case of disability discrimination. As to the defamation claim, the trial court held summary judgment was appropriate because Appellees did not publish any false statements, and even if they were published, the statements were protected by privilege. As to the fraud claim, summary judgment was granted because Appellant did not receive a representation from any decision maker. The trial court also concluded Appellees Schoene and Norman were immune from liability because they were employees of a political subdivision. Lastly, the court held the settlement of her grievance barred the causes of action. The trial court found the collective bargaining agreement contained an explicit nondiscrimination clause and the language of the settlement barred all causes of action related to the collective bargaining agreement. In conclusion, the trial court stated:

> This Court is not concluding that all actions of the Defendants were proper or best practices; however, this Court is concluding that there is no dispute of material facts, there is no just reason for delay, the facts reviewed most strongly in favor of Plaintiff do not rise to a cause of action and nevertheless are released by the settlement agreement, and therefore Defendants are entitled to Judgment as a matter of law.

3/15/16 J.E.

{¶13} Appellant appealed the trial court's final decision.

<u>Standard of Review for All Assignments of Error</u>

{¶14} We are asked to review the trial court's grant of summary judgment for Appellees. An appellate court reviews the granting of summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Thus, we apply the same test as the trial court. A trial court may grant summary judgment

only when (1) no genuine issue of material fact exists; (2) the moving party is entitled to judgment as a matter of law; and (3) the evidence can only produce a finding that is contrary to the non-moving party. Civ.R. 56(C).

{¶15} The initial burden is on the party moving for summary judgment to demonstrate the absence of a genuine issue of material fact as to the essential elements of the case with evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 292, 662 N.E.2d 264 (1996). If the moving party meets its burden, the burden shifts to the non-moving party to set forth specific facts to show there is a genuine issue of material fact. *Id.*; Civ.R. 56(E). "Trial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346, 617 N.E.2d 1129 (1993).

First Two Assignments of Error – Sex Discrimination

{¶16} The first two assignments of error address the trial court's grant of summary judgment for Appellees on Appellant's R.C. 4112.02(A) hostile work environment based on sex cause of action.

{¶17} R.C. 4112.02(A) provides it is unlawful for any employer based on sex "to discriminate against that person with respect to hire, tenure, terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." The Ohio Supreme Court has recognized two types of sexual harassment stemming from R.C. 4112.02(A) - "quid pro quo" harassment and "hostile environment" harassment. *Hampel v. Food Ingredients Specialties, Inc.*, 89 Ohio St.3d 169, 729 N.E.2d 726 (2000), paragraph one of the syllabus. "Quid pro quo" harassment is directly linked to the grant or denial of a tangible economic benefit. *Id.* "Hostile environment" harassment, does not affect economic benefits, but has the purpose or effect of creating a hostile or abusive working environment. *Id.* The claim in this instance is a hostile work environment based on sex.

{¶18} The United States Supreme Court has set forth a burden of proof framework that applies to federal employment discrimination cases. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973). That framework also

applies to Chapter 4112 discrimination cases. *Manion v. Interbrand Design Forum, L.L.C.*, 2015-Ohio-348, 27 N.E.3d 1007, ¶ 12 (2nd Dist.), citing *Mauzy v. Kelly Services, Inc.*, 75 Ohio St.3d 578, 582, 664 N.E.2d 1272 (1996).

**{¶19}** Under the *McDonnell Douglas* test, the plaintiff must first prove, by a preponderance of the evidence, a prima facie case of discrimination. Second, if the plaintiff does so, the burden shifts to the defendant "to articulate some legitimate, nondiscriminatory reason for the employee's rejection." *McDonnell Douglas* at 802. Third, if the defendant satisfies its burden, the plaintiff must then prove, by a preponderance of the evidence, that the defendant's reason was merely "a pretext for discrimination." *McDonnell Douglas* at 804.

**{¶20}** In this case, the first three assignments of error only address the first prong of the test – whether a prima facie case of discrimination was proven by a preponderance of the evidence to survive summary judgment. To establish a prima facie case of hostile work environment sexual harassment, Appellant must demonstrate: (1) that the harassment was unwelcome, (2) that the harassment was based on sex, (3) that the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment," and (4) that either (a) the harassment was committed by a supervisor, or (b) the employer, through its agents or supervisory personnel, knew or should have known of the harassment and failed to take immediate and appropriate corrective action. *Id.* at paragraph two of the syllabus.

**{¶21}** The second assignment of error will be addressed first and it provides:

"The trial court erred in granting summary judgment in that the facts, construed most favorably toward the former teacher, show that the dismissal erroneously found that the alleged conduct was not severe or pervasive."

**{¶22}** This assignment of error addresses the third prong of the prima facie case for hostile work environment based on sex - the harassing conduct was sufficiently severe or pervasive to affect the "terms, conditions, or privileges of employment, or any matter directly or indirectly related to employment." *Hampel*, 89 Ohio St.3d 169, paragraph two of the syllabus.

**{¶23}** Appellant's claim the harassing conduct was severe or pervasive is based on the following incidents.

**{¶24}** Early in her teaching career at Belmont Career Center, sometime in 2008, Appellant and Appellee Schoene had a conversation about Appellant's divorce from David Blomquist. Janiszewski Depo. 240. Appellee Schoene told Appellant he had gone through a divorce as well, it was very rough, and he understood how bad it could be. Janiszewski Depo. 240. He gave her his card with his cell phone number on it and told her he would help her through it. Janiszewski Depo. 240. Appellant never called Appellee Schoene. Janiszewski Depo. 240. She stated thereafter he was "cooler" towards her and later, when she was dating and then married to Jay Michael, he became really cold and even adversarial. Janiszewski Depo. 241.

**{¶25}** In May 2008, her yearly evaluation occurred with Appellee Schoene. Janiszewski Depo. 32. They met privately in her classroom and went over the evaluation. Janiszewski Depo. 33. After the evaluation he told her there were rumors she was seeing Jay Michael, who was the assistant principal at St. Clairsville High School. Janiszewski Depo. 33. She told him she did not feel comfortable discussing her personal relationship. Janiszewski Depo. 33. He told her he did not think it was a good idea for her to date Jay Michael. Janiszewski Depo. 33. The meeting then ended. Janiszewski Depo. 33. He did not use profanity or touch her during this encounter. Janiszewski Depo. 33. However, she was insulted Appellee Schoene asked her about her personal life. Janiszewski Depo. 33.

**{¶26}** The next alleged incident occurred in August 2010; Appellee Schoene had another conversation with Appellant about her relationship with Jay Michael. Janiszewski Depo. 34. This conversation was witnessed by Michael Saffell, the newly hired principal of the Belmont Career Center. Janiszewski Depo. 34-35. Appellee Schoene asked her if Appellant was still "with" Jay Michael. Janiszewski Depo. 35. She told him no. Janiszewski Depo. 35. He responded, "Well, he's not in your corner, so you should not be with him. He has talked to the principal, Mr. Rocchi, [principal of St. Clairsville High School] about you and has said various things about you and you should not be dating him." Janiszewski Depo. 35. Appellant was

humiliated by this conversation and was crying. Janiszewski Depo. 35. During this same meeting, student DVD projects were discussed. Janiszewski Depo. 38. According to Appellant, Appellee Schoene informed her Jay Michael told Mr. Rocchi there was inappropriate content on the DVDs. Janiszewski Depo. 38. Appellant explained when there was inappropriate content on the videos she did not permit students to watch the videos. Janiszewski Depo. 38. She claimed Appellee Schoene and Mr. Rocchi took some of the videos from her desk, viewed them, and deemed the content inappropriate. Janiszewski Depo. 39.

{¶27} One video was from a former student for her to critique. Janiszewski Depo. 39. It showed a person using an airsoft gun. Janiszewski Depo. 39. Another video was of a scantily clad girl dancing. Janiszewski Depo. 39. Appellant claims she brought this video to Mr. Rocchi's attention and asked him if it was inappropriate for school use. Janiszewski Depo 39. He found it was, and the girl and her parents were called into the office. Janiszewski Depo. 39. Appellant stated these videos were not shown to students. Janiszewski Depo. 39, 42, 43.

{¶28} The meeting lasted ten minutes. Janiszewski Depo. 36. Appellant acknowledged Appellee Schoene did not touch her in this meeting or use profanity. Janiszewski Depo. 37. She avowed she was taken aback by Appellee Schoene asking about her personal relationships, and to her knowledge, he had never done that with any male employee. Janiszewski Depo. 241.

{¶29} The next event was the Ohio Academy of Technical Showcase ("Showcase") in December 2010. Appellant's program was picked to participate in the Showcase; the Showcase was for exemplary programs and was located in Columbus, Ohio. Janiszewski Depo. 46. Appellant traveled with her students to the Showcase; however, they were not permitted by Appellee Schoene to stop on the way home for dinner. Janiszewski Depo. 47. She was told they were not permitted to make any stops for any reason. Janiszewski Depo. 47. Appellant explained to Appellee Norman that one of her students had a bladder issue and they may need to stop for a restroom break. Janiszewski Depo. 48. Appellant was told under no circumstances were they to stop. Janiszewski Depo. 48. Appellant claims she did

ask for a bathroom break, but the driver Bill Glitch would not stop. Janiszewski Depo. 57.

**{¶30}** Bill Glitch disputed that accusation in his affidavit. He claimed no one asked him to stop for a bathroom break, and if they had then he would have stopped because he was never instructed otherwise. Glitch Affidavit 6a. He further explained even if he was told they could not stop for a bathroom break, he still would have stopped if he had been asked. Glitch Affidavit 6a.

**{¶31}** Appellant acknowledged her program was not the only program from the Belmont-Harrison Career Center going to the Showcase. Janiszewski Depo. 57. Another program was invited; that group was supervised by a male teacher. That group was also instructed they were not permitted to stop for dinner. However, Appellant did not know if they were also told they would not be allowed to stop for bathroom breaks. Janiszewski Depo. 57.

**{¶32}** The next incident allegedly demonstrating harassment based on sex occurred in May 2011. The event was a meeting between Appellees Schoene, Norman, Appellant, and her union representative Charlie Galownia. This meeting occurred in Appellee Schoene's office. Janiszewski Depo. 61-62. Appellant claimed she did not invite her union representative; the representative was invited by Appellee Schoene. Appellant asserts Appellee Schoene accused her of having an improper relationship with a student. Janiszewski Depo. 61. Appellant Schoene said he had been informed she had one of her students living at her house. Janiszewski Depo. 62. Appellant explained the student's entire family was living at her house; the mother of the family was a longtime friend and needed a place to stay because they had been thrown out of their house. Janiszewski Depo. 62. Appellant explained the middle child was her son's best friend and had been living with her since October. Janiszewski Depo. 64. Appellee Schoene allegedly told her she should have reported the situation to Children Services and he could report her to Children Services. Janiszewski Depo. 64. She responded they only needed to stay until they found a new home. Janiszewski Depo. 64. Appellant claims Appellee Schoene was very angry she did not inform the Career Center of this situation, and he stated it was

inappropriate for her to have this family living with her. Appellant claimed Appellee Schoene insinuated the situation could cause her to lose her job. Janiszewski Depo. 66.

{¶33} Following the meeting, Appellee Norman scheduled an inventory of Appellant's classroom for June 7 or 8; Appellees Schoene and Norman and Appellant were to be present at this meeting. Janiszewski Depo. 70. Appellant contacted her personal attorney, Elgin McCardle, and asked her to be present at the meeting. Janiszewski Depo. 69-70. When Appellant got there, her attorney had not arrived, but Appellees Schoene and Norman were waiting for her in the room. Janiszewski Depo. 70. Appellant claims the meeting was not for an inventory, but a reprimand for having her friend's family living with her. Janiszewski Depo. 70. She claims they handed her a letter of reprimand informing her that in the future she was not to have another student reside with her or be in a vehicle with her. Janiszewski Depo. 70. After reading the letter, she refused to sign it. Janiszewski Depo. 73. Appellee Schoene was allegedly angry by her failure to sign. Janiszewski Depo. 73. When her attorney arrived, Appellant told her about the letter and tried to show it to her. Janiszewski Depo. 74. Appellee Schoene took the letter out of Appellant's hand, said the meeting was over, and stormed out of the room. Janiszewski Depo. 74. Fifteen minutes later the principle of St. Clairsville High School, Mr. Rocchi, came down to her room and took her keys. Janiszewski Depo. 75. Her email account was also suspended. Janiszewski Depo. 75. She returned to work in late August, but her email account was still not activated; it was not activated until mid-September. Janiszewski Depo. 79.

{¶34} Appellant acknowledged no profanity or inappropriate touching was used by Appellees Schoene and Norman in either of these two meetings.

{¶35} Appellant also stated that in general as a woman she was treated very condescendingly; whenever she brought an issue to Appellee Schoene, he was very condescending. Janiszewski Depo. 117.

{¶36} The trial court found the above evidence, even when viewed in Appellant's favor, did not establish the third prong for a prima facie case of hostile

work environment sexual harassment. It stated it did not approve of Appellees' conduct, and the conduct was not in the best practice. However, it found the conduct was not, as a matter of law, sufficiently severe or pervasive to create an abusive work environment. There was no abusive language, sexual teasing, physical touching, and the frequency of the conduct was not pervasive. 3/15/16 J.E.

**{¶37}** Courts have concluded the harassing conduct must be more than merely offensive; one, the conduct must be severe and pervasive enough that the victim subjectively regards the work environment as abusive, and two, a reasonable person would also find the environment abusive. *Brandner v. Innovex, Inc.*, 2012-Ohio-462, 970 N.E.2d 1067, ¶ 16 (1st Dist.), citing *Kilgore v. Ethicon Endo–Surgery, Inc.*, 172 Ohio App.3d 387, 2007-Ohio-2952, 875 N.E.2d 113, ¶ 24 (1st Dist.), citing *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67, 106 S.Ct. 2399 (1986). "[T]he objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position, considering 'all the circumstances,'" including "the social context in which particular behavior occurs and is experienced by its target." *Ellis v. Jungle Jim's Mkt., Inc.*, 2015-Ohio-4226, 44 N.E.3d 1034, ¶ 25 (12th Dist.), quoting *Oncale v. Sundowner Offshore Serv., Inc.*, 523 U.S. 75, 81, 118 S.Ct. 998 (1998).

**{¶38}** When determining whether the conduct is actionable, the court must examine the totality of the circumstances, including (1) the frequency of the conduct, (2) the severity of the conduct, (3) the threatening or humiliating nature of the conduct, and (4) whether the conduct unreasonably interferes with the plaintiff's work performance. *Kilgore* at ¶ 25–26, citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21– 22, 114 S.Ct. 367 (1993). *See also Hampel*, 89 Ohio St.3d at 180.

**{¶39}** "Fortunately or unfortunately, not all upsetting or even mean-spirited conduct in the workplace is actionable." *Easterling v. Ameristate Bancorp, Inc.*, 2d Dist. No. 23980, 2010-Ohio-3340, at ¶ 44, citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S.Ct. 367 (1993). The standards for judging hostility are demanding such that "the ordinary tribulations of the work place, such as, sporadic use of abusive language, gender-related jokes, and occasional teasing" will not constitute a hostile

work environment. *Varner v. Goodyear Tire & Rubber Co.*, 9th Dist. 21901, 2004-Ohio-4946, ¶ 18-20 (summary judgment case), citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275 (1998).

**{¶40}** The alleged incidents in this case do not include any touching, profanity, or sexual innuendo. The conversations were about her dating life, possibly a request to go out on a date, alleged inappropriate DVDs in her classroom, and an alleged inappropriate relationship with a student.

**{¶41}** The Eighth Appellate District has concluded multiple questions about an employee's personal and employment history and a comment about her posterior were not actionable. *Vitatoe v. Lawrence Industries, Inc.*, 153 Ohio App.3d 609, 2003-Ohio-4187, 795 N.E.2d 125, ¶ 39-41 (8th Dist.). The questions about the employee's personal and employment history were deemed to reflect a heightened curiosity about her. *Id.* at ¶ 39. Furthermore, comments about her posterior, although inappropriate, were not enough to constitute "severe or pervasive" behavior that is subjectively or objectively hostile. *Id.* at ¶ 40.

**{¶42}** The First Appellate District has similarly concluded when there is little in-person contact and the alleged harassment occurs over a nine month period, the harassment does not qualify as severe or pervasive. *Brandner v. Innovex, Inc.*, 2012-Ohio-462, 970 N.E.2d 1067, ¶ 16-19 (1st Dist.). The court upheld the grant of summary judgment for the employer reasoning that touching employee's leg but stopping when requested to do so, making comments employee should dress less conservatively, and a comment about going to a lake house if the employee were going to go did not reach the heightened severity level to be actionable. *Id.* In making this holding, the Appellate Court noted the comments and actions were possibly harassing. *Id.*

**{¶43}** The Ninth Appellate District has also held infrequent incidents that were minimal in nature did not amount to "severe or pervasive." *Varner v. Goodyear Tire & Rubber Co.*, 2004-Ohio-4946, ¶ 18-20 (9th Dist. Summit) (summary judgment upheld for employer). The alleged harassing incidents in that case were a physical touching

that occurred three years earlier and when requested to stop the perpetrator did, and a question about whether she was wearing panty hose. *Id.* at ¶ 19.

**{¶44}** In *Varner*, the court cited other cases where other courts found more offensive conduct insufficient to justify a hostile work environment. *Id.* at ¶ 20, citing *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (C.A.11, 1999), (finding that the conduct of a supervisor which included looking at the plaintiff's groin area and making a sniffing noise was insufficient to create a hostile work environment) and *Burnett v. Tyco Corp.*, 203 F.3d 980 (C.A.6, 1999) (holding that the conduct of plaintiff's supervisor, including placing a package of cigarettes inside plaintiff's brassiere strap and handing plaintiff a cherry cough drop while stating "[s]ince you have lost your cherry, here's one to replace the one you lost," did not create a hostile work environment).

**{¶45}** Recently, the Twelfth Appellate District overruled an employer's motion for summary judgment and held the employee's evidence demonstrated a genuine issue of material fact as to whether the harassment was severe and pervasive as to affect employment. *Ellis v. Jungle Jim's Mkt., Inc.*, 2015-Ohio-4226, 44 N.E.3d 1034, ¶ 24-25 (12th Dist.). In that case, employee produced evidence of supervisor's continuous, almost daily, preoccupation with sex talk and his unwelcome advances. *Id.* at ¶25. Supervisor's conduct included references to his penis, asking plaintiff about her sexual preferences and oral sex, telling plaintiff he wanted to "bend [her] over and BF" her and sticking his tongue out at her to simulate licking. *Id.*

**{¶46}** Considering all the above, the incidents in the case sub judice are comparable to the cases where trial courts have found the conduct complained of was not severe or pervasive. The evidence when viewed in Appellant's favor does not demonstrate there is a genuine issue of material fact as to the third requirement of a prima facie case for hostile work environment based on sex. The actions, even when viewed in her favor, were not severe and pervasive as to affect employment. This assignment of error is meritless.

**{¶47}** Failing one prong of the prima facie case means summary judgment must be granted for the movant. *Hale v. City of Dayton*, 2d Dist. No. 18800, 2002-

Ohio-542. Therefore, summary judgment on the hostile work environment based on sex cause of action is affirmed.

**{¶48}** The first assignment of error provides:

"The trial court erred in granting summary judgment. The facts, construed most favorably toward the former employee, show that the conclusion by the court that none of the alleged harassment was 'based upon sex' resolved disputed facts and failed to deal with admissions that the treatment of plaintiff was repeatedly worse than that afforded any male employee."

**{¶49}** This assignment of error also addresses the trial court's grant of summary judgment for Appellees on the hostile work environment based on sex cause of action. This assignment of error addresses the second prong of the test – the harassment was based on sex.

**{¶50}** Based on the evidence discussed above, the trial court found Appellant could not satisfy the second prong for a prima facie case of hostile work environment sexual harassment. 3/15/16 J.E. Appellant disagrees with that conclusion.

**{¶51}** As aforementioned, failing one prong of the prima facie case means summary judgment must be granted for the movant. *Hale*, 2d Dist. No. 18800, 2002-Ohio-542. Therefore, our resolution of the second assignment of renders this assignment of error moot.

<u>Third Assignment of Error – Disparate Treatment</u>

"The trial court erred in granting summary judgment because the facts, construed most favorably toward the former employee, show that the court erred in ruling that the disparate treatment claim was barred by lack of qualification where the male replacement was hired despite lack of qualification."

**{¶52}** This assignment of error addresses the trial court's ruling on the disparate treatment claim. The trial court found Appellant was not qualified for subsequent employment with Appellee Board because she did not have her teaching certificate renewed by the union contract's licensing renewal deadline. Appellant claims this decision is incorrect because she was treated differently than a similarly situated male, Luke Nelson. She contends Luke Nelson was not licensed by the

contract's license renewal date, but was still hired to fill the broadcast journalism/entertainment marketing teacher position.

{¶53} Appellant correctly indicates the stated reason her teaching contract was not renewed was failure to comply with the April 15, 2013 teaching license renewal deadline. The evidence also indicates Luke Nelson, her replacement and a male, was hired in June 2013. The record does not indicate whether his teaching license was renewed by April 15, 2013, but it appears Appellees concede he did not have his teaching license renewed by the April 15 deadline. They admit it would have been impossible for Nelson to meet the deadline because the teaching position did not become vacant until June 2013. Furthermore, his deposition testimony establishes he was not employed as a teacher in any school district at the time of his interview.

{¶54} In establishing a disparate treatment claim, the *McDonnell Douglas* test for establishing a prima facie case of race discrimination, with a slight variation, is used. *Chenevey v. Greater Cleveland Regional Transit Auth.*, 2013-Ohio-1902, 992 N.E.2d 461, ¶ 23 (8th Dist.). A prima facie case of racial discrimination under *McDonnell Douglas* requires a plaintiff to establish: (1) membership in a protected class; (2) adverse employment action; (3) qualification for the position lost or not gained; and (4) the position remained open or was filled by a person not of the protected class. *McDonnell Douglas*, 411 U.S. at 802. In disparate treatment cases, the first three elements remain the same; however, the fourth element is replaced with the requirement that the plaintiff show he or she was treated differently from similarly-situated individuals. *Chenevey*, citing *Mitchell v. Toledo Hosp.,* 964 F.2d 577, 582 (6th Cir.1992).

{¶55} The arguments in this instance focus on the element of "similarly situated." In order to demonstrate someone is similarly situated, the plaintiff must show "he or she is similarly-situated to the non-protected employee in all *relevant* respects." *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 353 (6th Cir.1998).

**{¶56}** Appellant cannot establish this prong of the disparate treatment claim. Luke Nelson was not similarly situated to her. Appellant was under a union teaching contract. The contract indicated if her teaching license for the following school year was not renewed by April 15, then a recommendation could be made to the School Board for it to not renew the teaching contract. She was forewarned of this prior to the renewal date. However, despite having 5 years to renew her license, she waited and was not able to renew her license by the deadline. Luke Nelson, on the other hand, was not seeking renewal under the contract. Rather, he was applying for the vacant position after Appellant's contract was not renewed. He was not working as a teacher at the time he applied. He was a new hire, not a renewal under the contract. Thus, Appellant and Nelson were not similarly situated in all *relevant* aspects. *See Lawrence v. Youngstown*, 7th Dist. No. 09 MA 189, 2011-Ohio-998, ¶ 51 (7th Dist.) (Rehire is not similarly situated to new hire. Reversed on other grounds by 133 Ohio St.3d 174, 2012-Ohio-4247. This rehire versus new hire holding (racial discrimination claim) was not appealed or not accepted for appeal, and as such, the decision stood. *Lawrence v. Youngstown*, 7th Dist. No. 09 MA 189, 2012-Ohio-6237, ¶ 10.).

**{¶57}** This assignment of error is meritless.

<u>Fourth Assignment of Error – Disability Discrimination</u>

"The trial court erred in granting summary judgment because the facts, construed most favorably toward the former employee show that the court erred in finding the employee was not a qualified employee for purposes of disability discrimination law, requiring reasonable accommodation from the employer to assist this disabled employee remaining qualified."

**{¶58}** Appellant had a horseback riding accident in November 2012. At the time of the accident she was completing the requirements to renew her license. Heather Hanson, the Director of Human Resources & Curriculum for Belmont-Harrison Joint Vocational School Board of Education, served as the chairperson for the Local Professional Development Committee (LPDC). Hanson Affidavit 2. She reviewed the coursework and professional development activities proposed and completed by educators in order to renew their licenses. Hanson Affidavit. 3b. In

September 2011, she reviewed Appellant's file and discovered Appellant had not done any activities for her license renewal cycle, which was July 1, 2008 through June 30, 2013. Hanson Affidavit 5. She immediately contacted Appellant by letter on September 20, 2011. Hanson Affidavit 5a. Having received no response, Hanson traveled to St. Clairsville High School on April 24, 2012 and provided Appellant with the necessary paperwork, explained the licensure renewal process, and walked Appellant through the procedure for completion. Hanson Affidavit 6a. After Appellant misplaced the paperwork, Appellant in the summer of 2012 notified Hanson. In August 2012, Hanson provided her with the paperwork again. Hanson Affidavit 6c. Appellant started submitting some of the completed paperwork on August 28, 2012. Hanson Affidavit 7.

{¶59} Part of Appellant's renewal requirements involved taking a class. Appellant was scheduled to take the class in the fall of 2012. However, in November 2012, Appellant was involved in a horseback riding accident that resulted in a severe concussion and multiple broken bones requiring multiple surgeries. Thus, Appellant was unable to complete the coursework and had to sign up for the class in the spring. The class was not completed prior to the April 15, 2013 deadline in the union contract. As such, Appellant's application for license renewal was not submitted until April 22, 2013. Hanson Affidavit 9.

{¶60} Two days before the April 15 deadline, Appellant asked for an extension of time to get her license. Summary Judgment Tr. 10. This was a request to accommodate based on disability.

{¶61} That request was implicitly denied when her contract was not renewed. Appellant's disability discrimination is based on the denial of the request for an accommodation.

{¶62} In order to establish a prima facie case of failure to accommodate plaintiff must show (1) she was disabled; (2) her employer was aware of the disability; and (3) "she was an otherwise qualified individual with a disability in that she satisfied the prerequisites for the position and could perform the essential functions of the job

with or without accommodation." *Plantz v. Cincinnati*, 149 Ohio App.3d 743, 2002–Ohio–5492, 778 N.E.2d 1073 (1st Dist.), ¶ 13.

**{¶63}** The trial court determined Appellant could not establish a prima facie case of disability discrimination because she was not qualified for the position:

> Janiszewski lacked a valid teaching license for the succeeding year at the time of the nonrenewal deadline. In short, Janiszewski did not meet the necessary prerequisites of the particular job. The Board was under no obligation to furnish Janiszewski with any reasonable accommodation in order to have her obtain the license, which was her obligation.

3/15/16 J.E.

**{¶64}** The trial court's reasoning is correct. Appellant did not request an accommodation to perform her teaching duties, despite her injuries. Appellant's argument is essentially she was discriminated against because she was not given an accommodation so she could qualify for the job.

**{¶65}** Such an argument does not support a prima facie claim of disability discrimination based on a failure to accommodate. An accommodation is not given so a person can satisfy the prerequisites of the position, such as the education required, the required license, or even physical fitness. *Batiste v. Cuyahoga Cty. Sheriff's Dept.*, 8th Dist. No. 85769, 2005-Ohio-6230, ¶ 28-29 (not qualified because not physically fit to perform all functions of a Corrections Officer). "An individual is qualified if he or she (1) meets the necessary prerequisites for the particular job, such as education, experience, and training; and (2) is able to perform the essential job functions, with or without reasonable accommodation." *Maracz v. United Parcel Serv., Inc.*, 8th Dist. No. 83432, 2004-Ohio-6851, ¶ 52 (position required a four year degree which applicant did not have).

**{¶66}** This reasoning is supported by decisions from Federal Courts. One Pennsylvania District Court has stated,

The determination of whether a plaintiff is a "qualified individual" at the time of the adverse employment action follows a two-step analysis:

"First, a court must consider whether 'the individual satisfies the prerequisites for the position, such as possessing the appropriate educational background, employment experience, skills, licenses, etc.' Second, the court must consider 'whether or not the individual can perform the essential functions of the position held or desired, with or without reasonable accommodation.'"

*McNelis v. Pennsylvania Power & Light, Susquehanna, LLC*, M.D.Pa No. 4:13-CV-02612, 2016 WL 4991440 (Sept. 19, 2016) (prima facie disability discrimination case), quoting *Gaul v. Lucent Techs., Inc.*, 134 F.3d 576, 580 (3d Cir. 1998) (quoting 29 C.F.R. pt. 1630, App.at 353-54). *See also Stern v. St. Anthony's Health Center*, 788 F.3d 276, 285 (7th Cir. 2015) (proper education, employment background, and licenses can be prerequisites of position); *Toney v. Swift Transp.*, W.D.Tenn. No. 07-2467-JPM/dkv, 2008 WL 4279622 (Sept. 12, 2008) (must demonstrate he possessed the appropriate education, background, employment experience, skills, licenses, etc. to be a qualified individual).

**{¶67}** The undisputed facts demonstrate Appellant was not qualified for the position. At the time of the contract renewal deadline of April 15, 2013, Appellant lacked a valid teaching license for the following school year. The contract required the teacher seeking renewal to have a valid teaching license for the following school year. The trial court's reasoning is correct.

**{¶68}** This assignment of error lacks merit.

Fifth Assignment of Error - Defamation

"The trial court erred in granting summary judgment because the facts, construed most favorably toward the former employee, show that the court erred when it held that defendants did not publish any false statements and even if they did they enjoyed a privilege from liability."

{¶69} Defamation is a false statement published by a defendant acting with the required degree of fault that injures a person's reputation, exposes the person to public hatred, contempt, ridicule, shame or disgrace, or adversely affects the person's profession. *A & B-Abell Elevator Co., Inc. v. Columbus/Cent. Ohio Bldg. and Constr. Trades Council*, 73 Ohio St.3d 1, 7, 651 N.E.2d 1283 (1995). The elements of a defamation action, whether slander or libel, are: (1) the defendant made a false and defamatory statement concerning another; (2) the false statement was published without privilege to a third person; (3) the plaintiff was injured; and (4) the defendant acted with the required degree of fault that was defamatory per se or caused special harm to the plaintiff. *Anzevino v. DePasquale*, 2016 Ohio 883, 60 N.E.3d 777 (7th Dist.), .¶16.

{¶70} Appellant alleged Appellee Schoene stated she was lazy and a thief. The trial court found none of the named defendants published these statements, and even if they did, the statements were privileged. As to privilege, the trial court found an absolute privilege and qualified privilege applied; the evidence demonstrated the alleged statements (if made) were made during board meetings or to law enforcement personal.

{¶71} Appellant disagrees with the decision. She claims the evidence, when viewed in the light most favorable to her, demonstrates Appellee Schoene made statements to Board Member Michael Fador calling Appellant a thief and implying she had some involvement with inventory missing from her classroom. She further claims Board Member Bob Zilai's deposition testimony confirmed that Appellee Schoene implied she was a thief.

{¶72} Appellant's assertion that Appellee Schoene told Board Member Fador Appellant was lazy and a thief comes from David Blomquist's deposition. Blomquist is Appellant's first ex-husband. He had a conversation with Fador about Appellant:

Q. Can you describe that conversation?

A. I went over to his house and just basically said I need to talk to you.

Q. Was this at his house?

A.  It was at his house.  I said I would like to talk to you about what's going on with Karin, and he became a little irritable pretty quickly.  I've known him for – I've known of him.  I've had conversations with him.  I've talked to you now more than I've ever talked to him in my life –

Q.  Okay.

A.  just to put that in perspective.  I basically just said, you know, I need to talk to you about what's going on with Karin.  He became kind of irritable and he was like, look, the word I'm getting from Rich [Schoene] is that she's lazy, she has an explanation for everything, she's not getting her stuff done.  I said, whoa, whoa, whoa, there's two sides to every story, and I started to talk to him, you know, tried to give the other side.

He was in the process of painting his home, his wife was there, probably not the ideal time to carry on a conversation.

Towards the end of the conversation, he alluded – I guess that's the best word I could use – to things missing, some sort of theft, didn't come right out and say that Rich said that, but he definitely alluded to – basically kind of what he said was, you know, there's also kind of some things have come up missing from her room, you know, some things aren't there anymore that has, you know, been brought to my attention.  That was pretty much the extent of the conversation.  Then he said that he was going to check into some things.  I never spoke to him again.

Q.  If I'm understanding you correctly, he never explicitly said Superintendent Schoene has said –

A.  Correct.

Blomquist Depo. 31-32.

**{¶73}** Appellant contends the following deposition testimony from Board Member Robert Zilai is also evidence Appellee Schoene told the Board or implied to them Appellant was a thief:

A. Well, we discussed that she never got her license renewed to teach, so therefore, we couldn't hire her if we wanted to.

Then also she – the equipment she was supervising or was under her care was being investigated because it was missing.

Q. Okay. Go ahead. Anything else?

A. That's really – those were the two main points.

* * *

Q. And I take it Mr. Schoene was the same one who said they're still investigating missing equipment?

A. Correct.

Q. When did this conversation in executive committee take place?

A. When? Well, let's see. I'm trying to think what board meeting. Probably March.

Zilai Depo. 10-11.

**{¶74}** The alleged missing equipment was discovered the August after Appellant's contract was not renewed. Luke Nelson did an inventory of the room and noticed missing equipment. The authorities were notified and at one point Appellant answered questions from BCI officers. No charges were ever brought against Appellant.

**{¶75}** The above comments Appellee Schoene made to Board Members are the only potential evidence of defamation. There is no evidence board members ever stated or implied Appellant was a thief or lazy; all board members denied making

comments. James Melvin Allen Affidavit ¶ 8; Charles Jason Ayers Affidavit ¶ 8; Scott Ballint Affidavit ¶ 8; Michael Fador Affidavit ¶ 8; Eric Gartner Affidavit ¶ 8; Frederick F. Hanlon Affidavit ¶ 7; David Jones Affidavit ¶ 7; Deborah Kenny Affidavit ¶ 8; Roger Stewart Affidavit ¶ 8; Michael Wallace Affidavit ¶ 8; Bob Zilai Affidavit ¶ 8. Likewise, there is no evidence Appellee Norman made such statements.

{¶76} The only evidence of statements Appellee Schoene made to the board comes from board member Zilai who stated Appellee Schoene discussed missing property from Appellant's room with the Board. That testimony does not indicate Appellee Schoene explicitly stated or implied Appellant was a thief. Blomquist's deposition testimony, admittedly, does not provide the statements Appellee Schoene made to the Board regarding Appellant; board member Fador never explicitly stated what Appellee Schoene said about Appellant.

{¶77} Assuming, without deciding, the evidence submitted is enough to demonstrate actionable published statements, Appellant must demonstrate privilege does not apply to these alleged statements. Part of publication of a false statement is that the statement was published without privilege to a third party. Appellee Schoene raised the defense of absolute or qualified privilege; he asserted the statements were made in executive session and thus, either absolute privilege or qualified privilege applied.

{¶78} The evidence, even when viewed in the light most favorable to Appellant, demonstrates the above statements that were claimed to imply she is a thief and is lazy occurred in the executive session of the board meeting. Bob Zilai deposition testimony clearly indicates the alleged defamatory statements were made in executive session. Zilai Depo. 9-11. His affidavit confirms that averment. Bob Zilai Affidavit ¶ 2, 5, 6. Blomquist's deposition testimony does not indicate if the impression Fador got from Appellee Schoene about Appellant occurred at a board meeting. However, the affidavit from Fador indicates Schoene discussed missing equipment in executive session. Michael Fador Affidavit ¶ 7. In his own affidavit, Schoene stated all of his discussions with the Board regarding Appellant were in executive session. Schoene Affidavit ¶ 4. He admitted to discussing the missing

equipment, but he denied that he implied Appellant was a thief. Schoene Affidavit ¶ 4e-f. Other board members confirmed Schoene discussed missing equipment in executive session and also avowed Schoene did not imply Appellant was a thief or lazy. James Melvin Allen Affidavit ¶ 2, 4, 6; Charles Jason Ayers Affidavit ¶ 2, 4, 6; Scott Ballint Affidavit ¶ 2, 4, 6; Michael Fador Affidavit ¶ 2, 5-7; Eric Gartner Affidavit ¶ 2, 4, 6; Frederick F. Hanlon Affidavit ¶ 2, 3-5; David Jones Affidavit ¶ 2, 3-5; Deborah Kenny Affidavit ¶ 2, 4-6; Roger Stewart Affidavit ¶ 2, 4-6; Michael Wallace Affidavit ¶ 2, 4-6; Bob Zilai Affidavit ¶ 2, 4-6.

{¶79} Therefore, since the evidence demonstrates the alleged statements were made during the school board's executive session, the question to be decided is: are statements made during a school board's executive session privileged?

{¶80} The defense of privilege is not based upon the words used but the circumstances of the utterance. *Post Publishing Co. v. Moloney* (1893), 50 Ohio St. 71, 33 N.E. 921 (1893).

{¶81} Absolute immunity (also called absolute privilege) provides complete protection from liability for defamation. *Curry v. Blanchester*, 12th Dist. Nos. CA2009–08–010, CA2009–08–012, 2010-Ohio-3368, ¶ 25. "'Upon certain privileged occasions where there is a great enough public interest in encouraging uninhibited freedom of expression to require the sacrifice of the right of the individual to protect his reputation by civil suit, the law recognizes that false, defamatory matter may be published without civil liability.'" *M.J. DiCorpo, Inc. v. Sweeney*, 69 Ohio St.3d 497, 505, 634 N.E.2d 203 (1994), quoting *Bigelow v. Brumley*, 138 Ohio St. 574, 579, 37 N.E.2d 584 (1941). The absolute privilege, however, has been found to apply only in very limited areas; generally it has been limited to legislative and judicial proceedings and other acts of state. *Id*. citing *Costanzo v. Gaul*, 62 Ohio St.2d 106, 403 N.E.2d 979 (1980).

{¶82} The Ohio Supreme Court determined that the rule of absolute immunity "may reasonably be applied to utterances made during the course of official proceedings by members of local governing bodies, at least where the statements relate to a matter under consideration, discussion or debate." *Costanzo* at 110.

However, absolute immunity "should not be extended to members of city council, where there is no pending legislation relating to the subject matter of the alleged defamation and where the publication is beyond the legislative forum." *Id.* Instead, statements made other than in a legislative session or related meeting should be afforded a qualified privilege. *Id.* at 110-111.

**{¶83}** The absolute privilege has been found applicable at a teacher's termination hearing before a school board. *Doe v. Mt. Vernon City School Dist. Bd. of Education*, S.D.Ohio No. 2:08-CV-575, 2010 WL 1433301 (Apr. 6, 2010). The absolute privilege applied because the termination hearing qualified as a quasi-judicial proceeding. *Id.* (For an administrative proceeding to be deemed "quasi-judicial" under Ohio law, the proceeding must include notice, a hearing, and the opportunity for the "introduction of evidence by way of exhibits and/or testimony." The evidence before the Court indicated the termination hearing met all three of the "quasi-judicial" requirements.).

**{¶84}** A qualified privilege is also a defense to a defamation claim. Under the defense of a qualified privilege, the interest the defendant is seeking to vindicate is conditioned upon publication in a reasonable manner and for a proper purpose. *Hahn v. Kotten*, 43 Ohio St.2d 237, 243, 331 N.E.2d 713 (1975). A qualified privilege has been applied to situations of intermediate importance, with immunity conditioned upon publication in a reasonable manner and for a proper purpose. *Gray v. General Motors Corp.*, 52 Ohio App.2d 348, 370 N.E.2d 747(8th Dist.1977).

**{¶85}** The elements of qualified privilege are: "[A] defendant must establish that (1) he acted in good faith; (2) there was an interest to be upheld; (3) the statement was limited in its scope to the purpose of upholding that interest; (4) the occasion was proper; and (5) the publication was made in a proper manner and only to proper parties." *Mosley v. Evans*, 90 Ohio App.3d 633, 636, 630 N.E.2d 75 (11th Dist.1993), citing *Hahn* at 246.

**{¶86}** A qualified privilege may be defeated only by clear and convincing evidence of actual malice on the part of the defendant. *Jacobs v. Frank*, 60 Ohio St.3d 111, 114–15, 573 N.E.2d 609 (1991). Actual malice is defined as "acting with

knowledge that the statements are false or acting with reckless disregard as to their truth or falsity." *Id.* at 116. "Reckless disregard" is demonstrated by presenting "sufficient evidence to permit a finding that the defendant had serious doubts as to the truth of [its] publication." *A & B–Abell Elevator Co.*, 73 Ohio St.3d at 12–13.

**{¶87}** There is no directive from the Ohio Supreme Court decisively indicating statements by the superintendent to the board during a meeting receive an absolute privilege. An appellate court has stated only a qualified privilege applies to the letter sent by the superintendent of the school district to a bond agent informing the bond agent that the school district was terminating plaintiff's (construction company) contract. *VanHoose v. Bd. of Educ. of Gallia Cty. Local School Dist.*, 4th Dist. No. 88 CA 1, 1989 WL 29835 (Mar. 27, 1989). The privilege was deemed to be qualified, because an absolute privilege only applies to utterances made during the course of official proceedings by members of local governing bodies. *Id.* No evidence existed to show appellee superintendent sent the letters or the bonding company received the letters during the course of an official proceeding. *Id.* The appellate court did not state if the letter was received or sent during the board meeting then an absolute privilege would apply.

**{¶88}** The facts in this case show a qualified privilege applies. The Ohio Supreme Court has explained:

> The defense of qualified privilege is deeply rooted in public policy. It applies in a variety of situations where society's interest in compensating a person for loss of reputation is outweighed by a competing interest that demands protection. Accordingly, the privilege does not attach to the communication, but to the occasion on which it is made. It does not change the actionable quality of the publication, but heightens the required degree of fault. This affords some latitude for error, thereby promoting the free flow of information on an occasion worthy of protection.

One type of interest protected by a qualified privilege is the public interest. The "public interest" privilege "involves communications made to those who may be expected to take official action of some kind for the protection of some interest of the public."

*A & B–Abell Elevator Co.*, 73 Ohio St.3d at 8–9.

**{¶89}** Appellee Schoene's alleged comments concerned personnel, school property, and the basis for a lawsuit by a former teacher against the superintendent and board. These types of communications are expected between the superintendent and the board during executive meetings. The only evidence concerning these statements demonstrates they were properly limited in scope, were made on the proper occasion, and were supplied to the proper parties. *Doe*, S.D.Ohio No. 2:08-CV-575, 2010 WL 1433301. Furthermore, none of the evidence submitted suggests the statements were made with actual malice. Consequently, a qualified privilege applies and summary judgment was properly granted on the issue.

**{¶90}** This assignment of error is meritless.

## Sixth Assignment of Error - Fraud

"The trial court erred in granting summary judgment because the facts, construed most favorably toward the former employee, show that the court erred in finding that the fraud was excused as related to future actions and because Janiszewski did not receive a representation from any decision maker."

**{¶91}** Appellant's fraud claim was based on statements made to her when the nonrenewal notices were delivered. Appellant claimed she was told there was nothing to worry about and everything would be okay. Appellant asserted she was under the impression that if she got her license renewed by the state's June deadline, then the non-renewal would be reversed.

**{¶92}** The trial court granted summary judgment for Appellees on the fraud claim. It found the alleged promises involved future action or conduct, no representations regarding Appellant's contract were made by any person with decision-making authority, and Appellant admitted she did not speak with Appellees Schoene or the Board until after her contract was not renewed. 3/15/16 J.E.

**{¶93}** The elements of fraud are: "(a) a representation or, where there is a duty to disclose, concealment of a fact, (b) which is material to the transaction at hand, (c) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred, (d) with the intent of misleading another into relying upon it, (e) justifiable reliance upon the representation or concealment, and (f) a resulting injury proximately caused by the reliance." *Burr v. Bd. of Cty. Commrs. of Stark Cty.*, 23 Ohio St.3d 69, 491 N.E.2d 1101 (1986), paragraph two of the syllabus.

**{¶94}** Generally "fraud cannot be predicated upon promises or representations relating to future actions or conduct." *Crase v. Shasta Beverages, Inc.*, 10th Dist. No. 11AP–519, 2012–Ohio–326, ¶ 42. To constitute actionable "fraud," the misrepresentation must be of a fact existing when the misrepresentation was made. *Yo–Can, Inc. v. The Yogurt Exchange, Inc.*, 149 Ohio App.3d 513, 526, 778 N.E.2d 80, 2002–Ohio–5194, ¶ 43 (7th Dist.). Representations as to what will take place in the future are regarded as predictions and not fraudulent. *Id.* However, an exception to this future promise rule exists. *Id.* Fraud occurs "where an individual makes a promise concerning a future action, occurrence, or conduct and, at the time he makes it, has no intention of keeping the promise." *Williams v. Edwards*, 129 Ohio App.3d 116, 124, 717 N.E.2d 368 (1st Dist.1998). *See also Yo-Can, Inc.*, at ¶ 43.

**{¶95}** In this instance, the alleged promises were for future events. Appellant claimed when the nonrenewal notices were given to her, Appellee Norman told her not to worry and it would be okay. Appellant took this to mean the nonrenewal notices were merely formalities and if she had her license renewed by the state's June deadline, then the nonrenewal would be reversed. The reversal of the nonrenewal was a future event. The exception to the future event rule does not apply in this situation. Appellant has produced no evidence the Board or Schoene represented the nonrenewal would be reversed; Appellant does not allege any Board member or Appellee Schoene said anything to her about her nonrenewal. Janiszewski Depo. 261.

**{¶96}** Appellant alleges Appellee Norman told her not to worry. However, Appellee Norman, the special education/testing coordinator, had no authority to renew Appellant's contract. Reliance on her statements was unreasonable. *See Struna v. Convenient Food Mart*, 160 Ohio App.3d 655, 2005-Ohio-1861, 828 N.E.2d 647, ¶ 13 (8th Dist.) (lottery case where court held reliance on the misrepresentations of a person without authority to modify the rules of the lottery negates any claim of justifiable reliance). Per statute the superintendent recommends renewal, and the Board renews contracts. *See* R.C. 3319.11. Appellant Schoene specifically stated he did not tell Norman to inform Appellant the nonrenewal and notices were just formalities and if her license was renewed by the state's June deadline then her contract would be renewed. Schoene Depo. 83. Furthermore, Appellant admitted she did not speak to Appellees Schoene or the Board about her nonrenewal until after her contract was not renewed. Exhibit O Request for Admissions, Admissions 12-14. There is no evidence that Appellees Board and Schoene told her the contract would be renewed. In her brief, she references a discussion she had with board member Deborah Kenny. Appellant's deposition testimony, however, does not indicate Kenny told her not to worry that her contract would be renewed. Rather, the testimony indicates Appellant made assurances to Board members, specifically Kenny, that her license would be renewed by the state, and she would have it for the next school year. Janiszewski Depo. 195.

**{¶97}** For the above stated reasons, this assignment of error lacks merit.

Seventh Assignment of Error - Immunity

"The trial court erred in granting summary judgment because the facts, construed most favorably toward the former employee, show that Schoene and Norman are not immune from liability under R.C. 2744."

**{¶98}** This assignment of error addresses the trial court's finding that Appellees Schoene and Norman are immune from liability. Appellant contends that decision is incorrect because the discrimination statute, R.C. 4112.02 preempts the sovereign immunity statute and expressly imposes civil liability.

**{¶99}** Appellant's arguments are moot given our resolution of the previous assignments of error. As there was no genuine issue of material fact regarding a hostile work environment based on sex, immunity does not need to be addressed.

<u>Eighth Assignment of Error - Settlement</u>

"The trial court erred in granting summary judgment because the facts, construed most favorably toward the former employee, show that the court erred in finding that plaintiff already settled this case."

**{¶100}** In July 2013, shortly after the Appellee Board did not renew her contract, Appellant filed a grievance. This grievance concerned the nonrenewal of her teaching contract and was filed under the terms of the collective bargaining agreement. The grievance proceeded to arbitration and was settled in 2013. Paragraph 4 of the settlement agreement states:

> The BHEA (Belmont-Harrison Vocational Education Association) and Janiszewski shall withdraw the above pending grievance with prejudice to refiling. Janiszewski will release and discharge the Board and its Administrators and employees from any and all grievances, demands or causes of action, known or unknown, related to the collective bargaining agreement in effect between the Board and the BHEA during the term of Janiszewski's employment with the District.

Settlement Agreement ¶ 4.

**{¶101}** The trial court determined paragraph 4 of the settlement agreement barred the discrimination lawsuit. It noted the collective bargaining agreement in effect between Appellee Board and the BHEA contained an explicit nondiscrimination clause. It also noted Appellant accepted compensation for the settlement and entered into it voluntarily. The trial court concluded its analysis with the following reasoning:

> Janiszewski's arguments are also not supported by the terms of the Settlement Agreement itself. There is no question that Janiszewski signed the Settlement Agreement with the Board after receiving cash

compensation and other consideration. There is no question that the Settlement Agreement specifically states that Janiszewski waives her claims against the Board and Board employees for "any and all . . . causes of action, known or unknown, related to the collective bargaining agreement." *Id.* Finally there is no question that the collective bargaining agreement obligates the Board to refrain from sexual and disability discrimination and provides each employee a grievance remedy. By pursuing a grievance, settling the grievance, accepting compensation, and releasing the Board and its employees for all claims arising under the collective bargaining agreement – which included prohibition against discrimination – Janiszewski waived her right to pursue future discrimination claims. Given the unquestioned facts in this matter, summary judgment must be entered in favor of the Defendants as to Counts I (Hostile Work Environment/Disparate Treatment) and II (Disability Discrimination) as Janiszewski waived her right to pursue both claims when she signed the Settlement Agreement and received just compensation from the Board.

Finally, all of Janiszewski's cla[i]ms are "related" to her employment, which employment is based upon her collective bargaining agreement. The release is for all causes of action *related* to the collective bargaining agreement, *being her employment*.

A cause of action is a fact or a combination of facts that give a person the right to seek judicial relief, which is a lawsuit or the right to bring a lawsuit. Janiszewski gave up her right to a lawsuit, her cause of action, relating to her employment, while represented by competent independent counsel and separately by her union.

3/15/16 J.E.

**{¶102}** Appellant asserts four arguments as to why this holding was incorrect. Appellant argues: 1) the language of the settlement agreement shows the hostile

work environment and disability discrimination claims were not waived or settled; 2) no party treated the settlement agreement as dispositive; 3) the non-discrimination clause lacks the power ascribed to it; and 4) the waiver language is not specific.

{¶103} Appellant's second argument is a procedural argument and as such, will be addressed first. Appellant appears to find fault with Appellees' use of the settlement agreement as a defense when it was not raised in Appellees' first motion for summary judgment.

{¶104} Appellant's argument has no merit. As Appellees correctly point out, the settlement agreement was raised as an affirmative defense in their answers to the complaints. Civ.R. 12(B); *See generally Nationstar Mtge, L.L.C. v. Young*, 9th Dist. No. 27499, 2015-Ohio-3868, ¶ 5, citing *Jim's Steak House, Inc. v. Cleveland,* 81 Ohio St.3d 18 (1998) (plurality) ("Affirmative defenses other that those listed in Civ.R. 12(B) are waived if not raised in the pleadings or in an amendment to the pleadings."). Admittedly, Appellees did not produce the settlement agreement until they filed their second summary judgment motion and only after the trial court mentioned the settlement agreement at the hearing on the first motion for summary judgment. The failure to raise it in the first summary judgment motion did not constitute waiver. If it would not have been raised in any of the summary judgment motions, then the argument would have been waived. *Bank of New York Mellon v. Crates*, 5th Dist. No. 15-CA-70, 2016-Ohio-2700, ¶ 13 ("Although pled in an answer, an affirmative defense is waived by failing to raise it during summary judgment proceedings."). Consequently, Appellees were permitted to raise the settlement as a defense.

{¶105} Appellant's first, third and fourth arguments focus on the language of the settlement agreement and language in the preamble of the collective bargaining agreement. The paragraphs at issue in the settlement agreement are paragraphs 4 and 6. The language at issue in the preamble of the collective bargaining agreement is paragraph E.

{¶106} In paragraph 4 of the settlement agreement, as stated above, the Board and its Administrators and employees are released from all causes of action,

known or unknown, "related to" the collective bargaining agreement that was in effect between the Board and the teacher's association during Appellant's tenure with the District.

{¶107} Paragraph E of the introduction to the collective bargaining agreement states, "The Board of Education does not discriminate on the basis of race, color, religion, national origin, sex, disability, military status, ancestry, age, genetic information, or any other legally protected characteristic, in its programs and activities, including employment opportunities." 2012-2014 Collective Bargaining Agreement.

{¶108} Appellees contend these two paragraphs indicate the settlement waived future claims, such as the hostile work environment/disparate treatment and disability discrimination claims.

{¶109} Appellant disagrees and contends paragraph 4 of the settlement agreement must be read in conjunction with paragraph 6 of the settlement agreement. When those paragraphs are read together, the settlement did not waive the discrimination claims.

Paragraph 6 of the settlement agreement states:

The parties mutually agree that this is a compromise of a disputed claim and neither this Agreement, nor any act in furtherance thereof or omission consistent therewith of any party, shall be considered as an admission against the interest or waiver of defense by that Party with respect to any future claim related to the employment relationship of Janiszewski with the Board.

Settlement Agreement.

{¶110} Considering the above language, we must decide whether the hostile work environment, sex discrimination and disability discrimination claims are related to the collective bargaining agreement. The trial court determined they were. Appellant argues the preamble lacks the power the trial court ascribed to it. Appellees admit statutory claims of discrimination are independent of the collective

bargaining agreement, but assert an employee can submit discriminatory employment practices to "the grievance-arbitration machinery of the collective-bargaining agreement." Since she can submit them to the "grievance-arbitration machinery" the language in the settlement agreement releasing the claims related to the collective bargaining agreement applies and forecloses Appellant from bringing discrimination claims in this suit.

{¶111} Other than the preamble to the collective bargaining agreement, there is no discussion of discrimination in the collective bargaining agreement. A grievance in the agreement is defined as a "violation, misinterpretation or misapplication of the terms and provisions of this agreement." Collective Bargaining Agreement, Article II, Section A. Therefore, the only means by which the discrimination suit would fall under the collective bargaining agreement is through the preamble.

{¶112} We then ask the question: is the preamble an indication that statutory discrimination claims are to be brought under the terms of the collective bargaining agreement?

{¶113} In interpreting the Ohio anti-discrimination statutes Ohio courts may look to cases and regulations interpreting federal civil rights legislation, including the federal Americans with Disabilities Act. *Columbus Civ. Serv. Comm. v. McGlone*, 82 Ohio St.3d 569, 573, 697 N.E.2d 204 (1998). There are United States Supreme Court decisions discussing whether discrimination claims when mentioned in a collective bargaining agreement are governed by the collective bargaining agreement or whether the claimant can still sue under the statute without exhausting the contractual rights. Our sister district has succinctly explained these cases:

> In *Wright v. Universal Maritime Service* (1998), 525 U.S. 70, 119 S.Ct. 391, 142 L.Ed.2d 361 the United States Supreme Court explicitly rejected an employer's argument that an employee's claim under the federal American with Disabilities Act was barred by his failure to exhaust his contractual remedies under a collective bargaining agreement. In making its decision in *Wright*, the Supreme Court relied on the landmark decision of *Alexander v. Gardner-Denver Co.* (1974),

415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 in which the Court held that an employee does not forfeit his right to a judicial forum for claimed discriminatory discharge in violation of Title VII of the Civil Rights Act of 1964 if "he first pursues his grievance to final arbitration under the nondiscrimination clause of a collective-bargaining agreement." *Id.* at 49, 1011. In *Gardner-Denver* the Supreme Court reasoned that a grievance is designed to vindicate a "contractual right" under a CBA rather than "independent statutory rights accorded by Congress." *Id.*

Ohio courts have followed the United State's Supreme Court's reasoning. In *Thomas v. General Electric Company* (1999), 131 Ohio App.3d 825, 723 N.E.2d 1139 the First District Court of Appeals held that an employee who was [sic] member of a labor union that had a collective bargaining agreement with an arbitration clause specifically providing for the resolution of disputes involving discrimination, was not required to proceed to arbitration first, or even at all, on claims that employer subjected him to racial discrimination in violation of civil rights law. The *Thomas* court reasoned:

"Labor arbitrators are authorized under a collective bargaining agreement to resolve contractual claims, not statutory claims. Labor arbitrators have developed a body of expertise in labor law. This is why the law presumes the arbitrability of disputes based upon a collective bargaining agreement. This is not, however, the same body of expertise or the same body of law implicated by the civil-rights statutes. Nor are the remedies the same." *Id.* at 830, 723 N.E.2d 1139.5

Following *Gardner-Denver*, supra, *Wright v. Universal Maritime Service*, supra and *Thomas v. General Electric Company*, supra we hold under Ohio law a union cannot prospectively waive the individual right of a member to select a judicial forum for the resolution of the member's

state statutory claims. This means that grievance procedures of both general language and those that speak directly to discrimination cannot prevent an employee from bringing statutory claims, absent language in the relevant statute to the contrary.

*Luginbihl v. Milcor Ltd. Partnership*, 3d Dist. No. 1-01-162, 2002-Ohio-2188, ¶ 25-28.

{¶114} However, not all districts agree with the Third Appellate District. For instance the First Appellate District disagrees. *Hopkins v. United Parcel Serv., Inc.*, 1st Dist. No. C–990392, (Feb. 11, 2000). The Eleventh District has reviewed both *Hopkins* and *Luginbihl* and has explained that *Luginbihl* is the more persuasive view:

In support, Newton Falls School relies on *Hopkins v. United Parcel Serv., Inc.*, 1st Dist. Hamilton No. C–990392, (Feb. 11, 2000). In *Hopkins*, the plaintiff brought a claim of race discrimination under R.C. Chapter 4112. *Id.* at 2. The Court of Appeals for the First District held that "[t]he plain language of [R.C. 4112.14(C)] indicates the General Assembly's intent to bar civil actions for age discrimination as well as 'other remedies available under this chapter' when the employee has the ability to arbitrate his claims." *Id.* at 5. The First District necessarily concluded that an age discrimination claim constituted a "remedy" within the context of R.C. Chapter 4112. *Id.* at 5–6 ("[t]o hold that the statute applies only to age-discrimination claims would in effect be to eliminate the language regarding 'other remedies,' a modification this court is not empowered to effectuate").

A different conclusion was reached in *Luginbihl v. Milcor Ltd. Partnership*, 3rd Dist. Allen No. 1–01–162, 2002–Ohio–2188. In *Luginbihl*, the plaintiff raised a claim of handicap/disability discrimination in violation of R.C. 4112.02. *Id.* at ¶ 8. The Court of Appeals for the Third District concluded that "R.C. 4112.14(C) is not applicable to the case at bar nor to any non-age discrimination claim brought pursuant to R.C. 4112.99." *Id.* at ¶ 36. Unlike the First District, the court in

*Luginbihl* did not consider the disability discrimination claim "a remedy under 4112.02 for there is no remedy provided therein." Rather, the plaintiff was "enforcing the 'thou shall not discriminate' language of R.C. 4112.02 through an action brought pursuant to R.C. 4112.99." (Emphasis sic.) *Id.* The Third District concluded that "[n]owhere in the language or the interpretation of the statute could it be said that R.C. 4112.14(C) applies to actions brought pursuant to R.C. 4112.99." *Id.*

The Third District also noted that R.C. 4112.14(C) was originally codified under R.C. Chapter 4101.17, as part of the Ohio Age Discrimination Statute, which barred "individuals [from] bring[ing] age discrimination claims to the court of common pleas when arbitration was available." *Id.* at ¶ 38. In 1995, this section was recodified as R.C. 4112.14(C). The court accepted the argument that "nothing about the recodification of the age discrimination statute suggests that the longstanding statutory limit on age-discrimination lawsuits in Ohio has now been extended to lawsuits involving all other forms of discrimination as well." *Id.*

We find the Third District's decision in *Luginbihl* to be persuasive. The Third District's conclusion that "R.C. 4112.14(C) does not apply to any claim not sounding in age discrimination" brought pursuant to R.C. 4112.99, 2002–Ohio–2188, at ¶ 39, is consistent with the Ohio Supreme Court's pronouncements in *Elek* and *Smith*. In particular, *Elek* affirmed that R.C. 4112.99 was the only Revised Code section to confer a remedy to pursue a civil action for disability discrimination, and *Smith* interpreted *Elek* to mean that this remedy existed independent of any recourse to administrative remedies. *Elek*, 60 Ohio St.3d at 137, 573 N.E.2d 1056; *Smith*, 92 Ohio St.3d at 506, 751 N.E.2d 1010.

> *Luginbihl* has also been found persuasive by Ohio federal district courts. *Pingle v. Richmond Hts. Local School Dist. Bd. of Ed.*, N.D. Ohio No. 1:12–cv–02892, 2013 U.S. Dist. LEXIS 141194, 14 (Sept. 30, 2013) (" § 4112.14(C) is properly limited to age discrimination claims, as its statutory history and placement in the 'age discrimination by employers' statute would suggest"); *Braud v. Cuyahoga Cty. Career Ctr.*, N.D. Ohio No. 1:06 CV 1059, 2007 U.S. Dist. LEXIS 22526, 16 (Mar. 27, 2007) ("[t]here is no requirement that an administrative process be followed * * * prior to bringing suit under §§ 4112.02 and 4112.99 for handicap discrimination") (cases cited). No court has followed *Hopkins* for the proposition that R.C. 4112.14(C) applies to non-age discrimination claims.

*Worley v. Newton Falls School Bd. of Edn.*, 11th Dist. No. 2014-T-0024, 2014-Ohio-5385, ¶ 18-22.

{¶115} In considering the above, we find the *Luginbihl* reasoning persuasive; the statutory claim does exist independent of the contract. Appellant was not required to exhaust her contract remedies prior to pursuing her statutory claims. Furthermore, the language in the preamble did not address statutory rights. Therefore, since the statutory claim is independent and the contract does not address statutory claims, the statutory discrimination claims are not "related to" the collective bargaining agreement. The "related to" language in the settlement agreement is not specific enough to settle the statutory claims. The settlement did not foreclose Appellant from pursuing the statutory discrimination claims.

{¶116} Considering all of the above, this assignment of error has merit. The settlement agreement had to be more specific to constitute a waiver of the statutory claims. This conclusion, however, does not require us to reverse the trial court's grant of summary judgment for Appellees. Our resolution of the previous assignments of error indicates Appellant's statutory claims do not survive summary judgment.

<u>Conclusion</u>

**{¶117}** The second, third, fourth, fifth and sixth assignments of error lack merit. The first and seventh assignments of error are moot. Appellant did not establish a prima facie case of hostile work environment based on sex, disparate treatment, or disability discrimination based on failure to accommodate. This determination renders the immunity issue moot. Appellant also failed to demonstrate a genuine issue of material fact on her defamation and fraud claims. The eighth assignment of error has merit; the settlement agreement had to be more specific to constitute waiver of the statutory claims. However, since under the other assignments of error, the statutory claims have been decided adverse to Appellant, summary judgment is affirmed. For all those reasons, the trial court's decision is affirmed.

Donofrio, J., concurs.

DeGenaro, J., concurs.